C. J. WELLS ET. AL. v. W. A. HEDDENBERG ET AL.

No. 780.

**1. Deed—Sufficiency of Description.**

Where land is in a triangular shape, and two lines, the length of which are not given, diverge from a point on the south, the course of the north boundary being furnished, its location will be fixed by a definite call for quantity.

**2. Release of Vendor's Lien—Effect of Conveyance.**

A vendor who conveys a tract of land, reserving a lien upon it, and who afterwards conveys part of the same tract to the same parties by an absolute deed, for a cash consideration, releases the lien upon such part.

**3. Power of Attorney—Conveyance.**

A power of attorney authorizing an agent to do everything with respect to land, "short of selling the same," and to make compromises or arrangements necessary to effect a settlement with another, does not authorize the agent to convey the land to such other person, the right to compromise being held subordinate to the right to convey.

**4. Deed to and by Tenants in Common—Bona Fide Purchaser.**

A deed to three persons vests in each the legal right to an undivided one-third of the land, and the right of a purchaser from one of them, without notice, cannot be affected by showing that by an arrangement between themselves, their interests were different.

**5. Same—Conveyance by Co-tenant of Specific Part—Vendee's Equity—Estoppel.**

While a co-tenant has no power to divert the title of his co-owners by selling a specific part of the common property, yet a court of equity will protect such purchaser, if it can be done without injury to the other owners, by setting apart to the vendee of the co-tenant the particular tract bought, and the co-tenant is estopped to deny that he conveyed a less interest than the entire title to the specific tract conveyed.

**6. Same—Foreclosure—Subsequent Purchaser.**

After such deed by a co-tenant has been executed and properly recorded, a foreclosure sale will not affect the rights of the purchaser, who was not a party to the suit, and a purchaser at the foreclosure sale will acquire no greater interest than the co-tenant had.

**7. Community Estate—Authority of Survivor—Presumptions.**

Presumptions of right of the wife to convey community property, it seems, will be rebutted by lapse of time after the death of the husband before the conveyance was made.

ERROR from Harris. Tried below before Hon. S. H. BRASHEAR.

*Burke, Kirlicks & Griggs,* for plaintiffs in error.—1. One owning an undivided interest in land, who sells a designated portion of same, can only convey his interest in such portion. His interest in the remainder remains in him in common with the owners of the other undivided interest, unless the division made by his conveyance be recognized and acquiesced in by the other joint owners. Stuart v. Baker, 15 Texas, 419; McKey v. Welch, 22 Texas, 396; Dorn v. Dunham, 24 Texas, 376; Good v. Coombs, 23 Texas, 51; March v. Huyter, 50 Texas, 251; Rutherford v. Stamper, 60 Texas, 449; Rev. Stats., art. 550.

2. A deed by an attorney in fact which shows on its face that such attorney had no power to make the deed is a nullity. Cox v. Bray, 28 Texas, 262.

3. A subsequent deed with warranty, given for a portion of a tract of land which has previously been conveyed by and to the same parties by a deed in which a lien for purchase money has been retained, is not a release pro tanto of the said lien, unless so expressed. Sayles' Civ. St. art. 2245, Rule 24 (122); Stanton v. Quenan, 91 Cal., 1; Champman v. Chapman, 55 Ark., 542; Jones on Liens, sec. 1075.

4. When a vendor's lien for the purchase money is retained in the deed, the title to the land remains in the vendor, his heirs and assigns, and they may elect to foreclose his lien or to sue in trespass to try title for the land. 2 Sayles' Civ. Stat., art. 3190b, sec. 9, p. 104; Wells v. Ufford, 52 Texas, 612.

*G. W. Sharp* and *J. M. Coleman,* for defendants in error.—Plaintiffs in error, intervenors in the court below, cannot recover at all, and any error they may complain of, if error it was, was harmless error; and the court's charge to the jury, "You are charged that the intervenors are not entitled to recover in this case, and you will find a verdict against them," was a correct charge, and the court committed no error in giving it.

*Stewart & Stewart,* for J. D. McKinnon et al., defendants in error.— In a collateral attack upon the judgment of a domestic court of general jurisdiction, to determine whether the record shows affirmatively that there was proper service, the whole of it must be considered together, and the recitals in the judgment, which is the last act of the court in the case, that *"the defendant was duly served,"* imports in a collateral proceeding absolute verity. Martin v. Burns, Walker & Co., 80 Texas, 676; Fitch v. Boyer, 51 Texas, 343; Jones v. City of Jefferson, 66 Texas, 578; Heck & Baker v. Martin, 75 Texas, 472; Treadway v. Eastburn, 57 Texas, 209; Trueheart v. McMichael, 46 Texas, 227; Williams v. Haynes, 77 Texas, 285; Davis v. Robinson, 70 Texas, 397; Hardy v. Beaty, 84 Texas, 562; Sloan v. Thompson, 23 S. W. Rep., 613; Freeman on Judgments, sec. 130.

GARRETT, CHIEF JUSTICE.—This was an action brought August 22, 1891, by Wm. A. Heddenberg and others, as the heirs of Abraham D. Heddenberg, and W. E. O'Brian and others as the heirs of Henry O'Brian, to recover of James D. McKinnon and others, a tract of land described as follows: "Being a portion of that certain tract of land lying in the city of Houston, Harris County, Texas, originally granted to James Wells, the parcel herein sought to be described containing thirty-one and one-half acres, bounded on the west by James Holman's survey, running south five degrees west; on the east by the line of the Henry Tierwester survey, running south twenty degrees west; on the north by A. Girard, Heddenberg, and Vedder's line, running south seventy degrees east;" also to vacate and set aside a judgment of the District Court of Harris County, rendered November 16, 1886, in cause No. 11,992, James

D. McKinnon v. Unknown Heirs of Henry O'Brian and A. D. Hed-
denberg, quieting the title to said tract of land in the said James D. Mc-
Kinnon. On May 21, 1892, the plaintiffs in error, C. J. Wells and others,
intervened in the suit, as the heirs of James Wells, deceased, the original
grantee of the land, and sought to recover the same of the plaintiffs
and defendants. There was a trial by jury, which, in obedience to the
charge of the court, returned a verdict in favor of the defendants for
the land claimed by each of them in their answer, and for the plain-
tiffs 12 acres not claimed by defendants. Judgment was entered in
accordance with the verdict and against the intervenors.

A patent was issued by the Republic of Texas to James Wells, Jan-
uary 20, 1846, for 2,049,090 square varas, or about 363 acres of land,
which includes the land in controversy. This land was located and sur-
veyed for Wells in 1838, and the survey for location called for 491 acres.

Prior to the issuance of the patent, James Wells, joined by his wife,
Jane, conveyed by deed, dated October 3, 1838, the James Wells survey
to August Girard, Charles J. Heddenberg, and Philip V. Vedder, the
land afterwards patented, described by adjoining surveys and as a tract
of 491 acres, for a consideration of $4910, of which $250 was paid in
cash, $250 to be paid when the patent issued, and the balance in three
equal payments, six, nine, and twelve months thereafter. A lien was re-
served in the deed for the purchase money.

And on January, 1840, Wells and his wife conveyed to the same
grantees, as in the deed of October 3, 1838, the 31½ acres of land in con-
troversy, for a recited cash consideration of $500. It was by a deed duly
proved for record, and recorded on the same day of its execution.

August Girard, on January 10, 1840, by a deed recorded January 11,
1840, for a valuable consideration conveyed to Henry O'Brian, by metes
and bounds, a part of this 31½ acres tract. It measures one-half of the
land and is the north end thereof.

Philip V. Vedder died in 1840, leaving as his sole heir at law Jacob
N. Vedder, who also administered on his estate January 19, 1841. Jacob
Vedder executed a power of attorney to R. C. Campbell, in which he
empowered Campbell generally to represent him in the Republic of
Texas, and to rent, lease, and do everything with respect to real estate,
"short of selling the same;" also "to act in my name and stead in ad-
justing with Charles J. Heddenberg of the city of Houston, in the afore-
said Republic of Texas, for such portion of the estate of my intestate,
Philip V. Vedder, deceased, belonging to him as partner of the late
Heddenberg & Vedder, as I may be entitled as administrator aforesaid as
(or) personally, be the adjustment (be) made amicably or by suit;" also
generally "to make any compromise or arrangement necessary for my
interest as administrator or personally in this Republic." This power
of attorney was acknowledged January 20, 1841, and was recorded Feb-
ruary 19, 1845.

On May 1, 1841, R. C. Campbell, acting by virtue of the foregoing
power of attorney, executed a quit claim deed in the name of Jacob N.

Vedder, as administrator, and as heir of Philip V. Vedder, deceased, to Charles J. Heddenberg, for a recited consideration of one dollar, of all right, title, interest, and estate of the said Jacob N. Vedder, as heir and as administrator as aforesaid, to lots and parcels of land, among which were the tract conveyed by James Wells and wife, October 3, 1838, and the 31½ acres conveyed January 1, 1840. This deed was duly acknowledged and recorded April 8, 1848.

Charles J. Heddenberg, on May 2, 1842, by deed with general warranty of title, duly acknowledged May 18, 1842, and filed for record on the same day, conveyed, for a recited consideration of $3000, together with other land, to Abraham D. Heddenberg, "the undivided half of a tract of land bought of said James Wells and wife by Girard, Heddenberg & Vedder, containing about thirty-one and a half acres," which was bounded as in the original deed of Wells and wife to said parties.

James Wells brought suit, No. 1563, in the District Court of Harris County on September 8, 1846, against August Girard, who was alleged to be a resident of Mobile, Alabama; Charles J. Heddenberg, of Tennessee, and Jacob N. Vedder, of Schenectady County, New York, who was alleged to be the sole heir at law of Philip V. Vedder, deceased, to recover upon a written obligation executed by the said August Girard, Charles J. Heddenberg and Philip V. Vedder for the James Wells survey conveyed to them October 3, 1848, upon which he alleged they were indebted to him in the sum of $3380, after allowing for the deficiency in the acreage of said tract, and that by the terms of the obligation there was then due the first two payments, to-wit, $250 due January 20, 1846, when the patent issued, and $1043.33 six months thereafter, to-wit, July 20, 1846, together with interest on these sums, for which he prayed judgment and foreclosure of his lien. August Girard was cited by publication, but Charles J. Heddenberg and Jacob N. Vedder answered separately, each pleading several defenses. It appeared from the answer of these defendants that the interests acquired by Philip V. Vedder and Charles J. Heddenberg, respectively, in the land purchased from Wells and wife, were one-fourth part each, but when this admission was pleaded the said Charles J. Heddenberg had already conveyed to A. D. Heddenberg, and Robert C. Campbell, as attorney in fact for Jacob N. Vedder, had already conveyed to Charles J. Heddenberg.

Wells obtained judgment in suit No. 1563 on May 25, 1847, for $1594.58, then due of the purchase money, with foreclosure of lien on the entire tract as prayed for. There was judgment against each defendant for one-third of the amount, as on joint obligation, and the judgment recited that for a valuable consideration the plaintiff had agreed and contracted not to hold the defendants, Heddenberg and Vedder, liable for any balance after the sale of the land, but as to such balance it was understood they were to be released and discharged. No mention was made in either pleading or judgment of the 31½ acres conveyed January 1, 1840.

An order of sale was issued July 8, 1847, and the entire tract of land

was sold by the sheriff and bought by the plaintiff, James Wells, for $72, which was credited on the judgment, and the sheriff executed a deed to plaintiff for said land, which was dated August 3, 1847, and recorded December 18, 1847.

On December 18, 1847, James Wells obtained a consent decree as to Heddenberg and Vedder in a second suit against the same parties, No. 1612, in the District Court of Harris County, ordering the sale of the land for the balance of the purchase money not sued for in the first suit, provided any of the land remained unsold upon the former decree between the parties. No order of sale was ever issued on this decree.

On October 16, 1848, execution for costs issued in both of said cases, and at the direction of the plaintiff Wells was levied upon the 31½ acres in controversy, as the property of the defendants, and the same was advertised for sale on November 7, 1848, when it was sold by the sheriff and bought by J. W. Henderson, who was attorney of record for the plaintiff, for $32, and the sheriff executed him a deed. In the meantime, that is, between the levy and the sale, the plaintiff Wells had died. Henderson conveyed the land to plaintiff's widow, Jane Wells, by special warranty deed, in consideration of $30, on September 10, 1850.

James Wells and his wife, Jane, both died intestate, and the plaintiffs in error are their sole heirs, as represented in the plea of intervention.

Jane Wells conveyed the land to W. C. O'Driscoll, July 17, 1860, by a general warranty deed. O'Driscoll died testate, devising it to Margaret Drew and James D. McKinnon in equal parts.

On August 25, 1882, Margaret Drew conveyed to M. D. McCabe, by deed duly recorded September 7, 1882, "the undivided one-half of forty-one and a half acres, more or less, in Harris County, Texas, out of the James Wells survey, acquired by W. C. O'Driscoll from Jane Wells, reference to which deed of record in Harris County, Texas, is here made for metes and bounds." Under his deed from Jane Wells, W. C. O'Driscoll had taken possession and marked the boundaries of more land than was conveyed to him by her.

McKinnon and McCabe made partition of the 41½ acres between themselves by deed executed by McKinnon to McCabe, June 4, 1883, and by McCabe to McKinnon, June 16, 1883, both of which were duly recorded.

McCabe conveyed to McKinnon "part of forty-one and one-half acres tract out of the James Wells survey, known as the Driscoll tract, and described as follows: Twenty-nine and one-half (29½) acres, more or less, out of the said Driscoll tract, said land being the balance of land after taking from the north side of said Driscoll 41½ acres the sum of 12 acres. For full description of said 12 acres tract, see partition deed of James D. McKinnon to M. D. McCabe, for which this deed is given as consideration. For full description of said Driscoll 41½ acres tract, see probate records of Harris County, Texas, Book U, p. 668, estate of W. C. O'Driscoll, deceased." McKinnon conveyed to McCabe "a part of the 41½ acres tract of the James Wells survey, known as the Driscoll tract, and described as follows: "Beginning at a point on the east line of the

Holman survey, and 775 feet from the northwest corner of the Driscoll tract; thence northerly to the northwest corner of the Driscoll tract, part of which is here conveyed; thence north 80 degrees east 331 feet along the south side of an old ditch to the northwest corner of the Levy survey; thence south 10 degrees east 596 feet along the west side of an old ditch to Levy's southwest corner; thence south 20 degrees west 385 feet. along the west line of H. Tierwester's survey; thence in a straight line to the place of beginning, 827.88 feet, containing 12 acres of land." The 12 acres lie almost entirely without the 31½ acres.

James D. McKinnon brought suit February 4, 1886, in the District Court of Harris County, cause No. 11992, James D. McKinnon v. Unknown Heirs of Henry O'Brian and A. D. Heddenberg, to remove cloud from title to the 31½ acres. Only the citation by publication and return thereon and the judgment appear in the record. Citation by publication issued February 4, 1886, directing service by publishing it for eight consecutive weeks, and defendants were cited to appear on the first Monday in March, 1886. Publication was made for eight weeks, from February 4 to April 6, 1886. Judgment was rendered November 16, 1886, quieting title to entire tract in McKinnon.

Many of the defendants are the purchasers from McKinnon of parcels of the tract awarded to him, and judgment was entered therefor in their favor against plaintiffs and interveners.

September 16, 1889, M. D. McCabe conveyed this 12 acres tract to J. W. Armstrong, who afterwards, on September 22, 1890, conveyed it to the San Antonio & Aransas Pass Railway Company; and in a suit by the interveners against said railway company, No. 13845, J. T. Wells et al. v. J. W. Armstrong et al., they obtained judgment therefor on October 8, 1891.

The description of the land in controversy, as given in the petition, is that contained in the deed of January 1, 1840, from James Wells and wife to August Girard, Charles J. Heddenberg and Philip V. Vedder, which purports to convey 31½ acres of the James Wells survey. This deed is a good absolute conveyance of the land, if the description is sufficient. The calls for the east and west boundaries show that the land lies in a triangular shape, the lines diverging from the point on the south at an angle of fifteen degrees, and is without a south boundary. The length of these lines is not given, but the course of the north boundary is furnished, and its location will be fixed by the definite call for 31½ acres as the quantity of land sought to be conveyed. Hence, the description is sufficient, and the north line must be run in the course called for between points on the east and west lines at sufficient distances on said lines from the apex of the triangle to give the quantity of land called for in the deed.

When James Wells executed the deed conveying the 31½ acres absolutely to Girard, Heddenberg and Vedder for a valuable consideration, paid in cash, he released this tract from the vendor's lien reserved in his deed conveying the entire survey, and clothed them with the absolute

title. This divests the case of all question about the superior title being in Wells, and the attitude of the vendees of Girard and Charles Heddenberg, who were not parties to the suit to foreclose the vendor's lien. When Girard conveyed to Henry O'Brian on January 11, 1840, long before the suit for foreclosure was brought, the latter obtained whatever interest he bought discharged of the vendor's lien, and this was unaffected by the subsequent foreclosure to which he was not a party, provided the deed from Girard to him for a specific part of a tract in which the grantor had only an undivided interest, vested in O'Brian such interest as required Wells to make him a party to the suit to foreclose, which will be considered further on. Charles J. Heddenberg, by his deed to Abraham D. Heddenberg on May 2, 1842, for an undivided one-half conferred absolute title on the latter, to the interest owned by him, not to exceed the interest he undertook to convey. Jacob N. Vedder's power of attorney to Campbell did not authorize him to convey land, but expressly withheld that power, as the authority conferred to compromise with respect to the land must be held subordinate to the right to convey. Then Campbell's deed as attorney in fact for Jacob N. Vedder did not operate as a conveyance of Vedder's interest to Charles J. Heddenberg. This being the case, title remained in Jacob Vedder when the foreclosure suit was brought. Being a party to that suit, the lien there foreclosed bound his interest, and Wells became the owner thereof by purchase at the foreclosure sale. The deed of James Wells to Girard, Heddenberg and Vedder vested in each of them the legal title to an undivided one-third of the land. Where the rights of purchasers without notice are not affected, it might be shown that by an arrangement between the grantees themselves, the interests were different. But the averments in the answer of Charles Heddenberg and Jacob Vedder in the foreclosure suit, that their interests were each one-fourth and that of Girard one-half, would not be evidence that such were the several interests of the parties; and as far as this record shows, James Wells, by his purchase at the foreclosure, acquired as the interest of Vedder an undivided one-third of the land, and the interest of the heirs of Henry O'Brian is one-third.

Girard, by his deed to Henry O'Brian, undertook to convey by metes and bounds a specific part of the land, amounting by calculation to one-half thereof. Appellant contends that the operation of this deed was only to convey whatever interest Girard had in the specific part. Such conveyances have been held void, but our Supreme Court in passing on the validity of such deeds, has said that, "as against the grantor himself, the deed would be valid and effectual to bind, by estoppel, at least his interest in the specific land conveyed." March v. Huyter, 50 Texas, 251. Such conveyances are not void. Pas. Dig., art. 998; Rev. Stat., art. 550. Purchasers from a tenant in common hold subject to all equities existing between the co-tenants, to be worked out in the partition of the land. Mast v. Tibbles, 60 Texas, 306. In Furrh v. Winston, 66 Texas, 523, it was held, that "while a co-tenant has no power to divest the title of his

co-owners by selling a specific part of the common property, yet it is well established that a court of equity will protect such a purchaser, if this can be done without injury to the other owners, by setting apart to the vendee of the co-tenant the particular tract bought." If this should be done, the tract so set apart would certainly be charged against the interest of such co-tenant in the remainder of the land. Emeric v. Alvarado, 90 Cal., 444. In the California case cited, it was decided that such a conveyance was not void, and that the grantee under it did not take only such share as would be equal to the undivided interest which the granting co-tenant had in such specific tract, but that the court would "set apart a specific tract to the share of a co-tenant who has undertaken to convey the title in fee to such tract in severalty, so that the grantee may have what is justly his, when such disposition of the land can be made without material injury to the rights and interests of the other co-tenants." That such a deed can only be avoided by a co-tenant, and then only so far as necessary to enable him to procure an equitable partition, seems to be the effect of the decisions of our Supreme Court. Arnold v. Cauble, 49 Texas, 531. As Girard would be estopped to deny that he conveyed a less interest to O'Brian than the entire title to the specific tract conveyed by him, which would absorb his entire interest in the land, Wells, by his purchase at the foreclosure sale, acquired no greater interest than Girard had, which was nothing. The deed from Girard to O'Brian had been executed and properly recorded long before the fore-closure suit was brought, and was notice to Wells, so that the foreclosure and sale did not affect the rights of O'Brian. It is not believed that this deed is void for the want of a sufficient description, although a call seems to have been omitted, which was supplied in the judgment. Interveners are not estopped from asserting title as the heirs of James Wells under the foreclosure sale as against the defendants, who hold under Jane Wells through the execution sales, by the fact that he pointed out the land as the property of the defendants when the executions were levied. As nothing was acquired by the execution sales, it will be unnecessary to decide whether or not the death of James Wells, between the levy and sale, affected their validity. As we have seen, Vedder was the only defendant in whom title remained when Wells brought his suit to fore-close, and that was acquired by James Wells under the foreclosure sale. Since it was community property at the death of James Wells, one-half of the Vedder interest vested in the interveners.

There is nothing to show that Jane Wells conveyed in her right, as survivor of the community, and this view of the case would seem to be rebutted by the lapse of time after the death of James Wells before she conveyed the land to O'Driscoll. Her conveyance to O'Driscoll, however, passed to him her community interest which the defendant McKinnon and those holding under him acquired as to the 29½ acres conveyed to him in the partition with McCabe. Plaintiffs were only entitled in any event to recover the land described in their petition, and as the 12 acres tract necessarily lies outside of the 31½ acres, being off the north end,

except two acres, they should not have recovered any portion thereof, except as to the two acres.

By their recovery of the McCabe 12 acres in the suit against the San Antonio and Aransas Pass Railway Company, the interveners acquired the community interest of Jane Wells, which gave them the entire title to the Vedder interest in the two acres lying within the $31\frac{1}{2}$ acres tract. And here it may be remarked, that if, as contended by the appellants, O'Driscoll had acquired the title to the 12 acres of land by limitation against plaintiffs, the appellants having obtained O'Driscoll's title by their judgment against the San Antonio and Aransas Pass Railway Company, could avail themselves of this title by limitation and recover the entire portion of the 12 acres put in controversy. Unless defeated by limitation running against them, so far as appears from the record, interveners are entitled to recover one-half of the Vedder interest in the McKinnon $29\frac{1}{2}$ acres; that is to say, if the McKinnon tract lies, as supposed, entirely within the $31\frac{1}{2}$ acres.

The heirs of Heddenberg and O'Brian do not complain of the judgment against them upon the validity of the decree in the publication suit by McKinnon to quiet title in him; so that question is not before us. If valid, it is binding only as to the title of McKinnon, and does not affect the McCabe tract.

The refusal of the court below to allow interveners to take a nonsuit does not present a question of any practical importance on another trial. We have indicated our views with respect to the rights of the parties unaffected by the defense of limitation and improvements in good faith.

The judgment of the court below will be reversed and the cause remanded for another trial.

*Reversed and remanded.*

Delivered March 7, 1895.