### BUSHONG v. SCRIMSHIRE et al. †
### (No. 7984.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 14, 1914. Rehearing Denied Dec. 12, 1914.)

1. VENDOR AND PURCHASER (§ 308\*)—CONTRACTS—ACTION BY VENDORS—DEFENSE—INSUFFICIENCY OF TENDER — OUTSTANDING LIENS.

In an action by vendors for the price of land which the purchaser denied agreeing to pay for, defendant's contention that he should not be required to accept the deed tendered by three plaintiffs because there were outstanding vendors' liens in favor of one such plaintiff presented no defense, where it appeared that the lien notes were long past due, and did not appear that any recorded transfer of the notes had been made or that defendant had actual notice of any such transfer, especially where defendant had a duly recorded title to the land at the time of the creation of the purported liens.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 862, 877–899; Dec. Dig. § 308.\*]

2. VENDOR AND PURCHASER (§ 80\*) — CONTRACTS—FINDINGS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action by vendors for the price of land which the purchaser claimed to own, and which he denied was included in the contract, held to sustain finding that the land in controversy was pointed out to defendant; that he knew that plaintiffs were claiming same; that he agreed to pay for same in consideration of receiving a quitclaim deed thereto from plaintiffs; and that, though defendant's title to the land was superior to that of plaintiffs, he made this agreement to preclude any further dispute relative thereto.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.\*]

3. VENDOR AND PURCHASER (§ 314\*)—CONTRACTS—PETITION—CONSTRUCTION.

In an action by vendors for the price of land, an allegation in the petition that defendants agreed to accept a quitclaim deed from plaintiffs was equivalent to an allegation that

he agreed to take chances on their title, and dispensed with the necessity of a specific allegation that defendant agreed to purchase with notice of defects in plaintiffs' title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 920–927; Dec. Dig. § 314.*]

4. APPEAL AND ERROR (§ 1071*)—HARMLESS ERROR—FINDINGS.

Where, in an action by vendors for the price of land, the evidence supported a finding that one plaintiff had possession of the land during a certain period, error in finding, without supporting evidence, that another plaintiff also had such possession was harmless, where possession, of the one plaintiff was sufficient to authorize the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by W. B. Scrimshire and others against J. L. Bushong. From judgment for plaintiffs, defendant appeals. Affirmed.

·J. C. Terrell, of Ft. Worth, for appellant. Cowan & Burney and C. M. Templeton, all of Ft. Worth, for appellees.

DUNKLIN, J. W. B. Scrimshire, Mrs. Katherine V. Bury, joined by her husband, H. G. Bury, and Mrs. Ida L. Turner, as parties of the first part, and J. L. Bushong, as party of the second part, entered into the following contract in writing:

"That the said parties of the first part agree and bind themselves to convey to the said party of the second part by warranty deed, except about three acres, which is to be by quitclaim deed, thirty acres of land, more or less, out of the W. D. Conner survey, lying on the Trinity river, west of Trinity Park, and being the same land deeded to George L. Berry and Ida Turner, a two-thirds interest therein, on or about October 5, 1911.

"The said party of the second part hereby agrees and binds himself to pay to the said parties the sum of three hundred dollars per acre as follows: Deed by warranty deed, one house and lot valued at three thousand dollars, situated at 664 Calhoun street, city of Ft. Worth, Tex., and four promissory notes as follows: One note for one thousand dollars, due on or before one year from date. One note for one thousand dollars, due on or before two years from date. One note for one thousand dollars, due on or before three years from date. One note for three thousand dollars, due on or before four years from date. All of said notes to bear 8 per cent. interest, interest payable annually, as it accrues, from date of notes.

"The said party of the second part is to have, with the thirty acres of land, more or less, the pumping plant and all machinery connected therewith, free from all liens whatsoever the house, well, stables, and all buildings situated on said tract, with all the rights and privileges now held by the said parties of the first part."

This suit was instituted by Scrimshire, Mrs. Bury, and Mrs. Turner against Bushong to recover the price which it was alleged defendant was bound by that contract to pay for 3.04 acres of land. In their petition, after setting out the substance of the contract above quoted, the plaintiffs alleged that, in compliance therewith, they had con-

veyed, by warranty deed, to the defendant 24.05 acres of land covered by the contract, in consideration of which conveyance the defendant had conveyed to them the house and lot mentioned in the written contract at an agreed valuation of $3,000, and had executed to plaintiffs his three promissory notes in the sum of $1,000 each, and another note for the sum of $1,215, making a total consideration of $7,215, or $300 per acre for said 24.05 acres of land. Plaintiffs further alleged in the petition that they had tendered to the defendant the quitclaim deed for 3.04 acres of land, which was the balance of the land covered by said contract, and had demanded of the defendant the contract price of $300 per acre therefor, but that said tender and demand had been refused by the defendant, and a recovery was sought upon that demand. Plaintiffs also sought to recover the value of a crop of corn grown upon the land which it was alleged defendant agreed to buy.

Defendant specially pleaded that the land which was conveyed to him by the plaintiffs as alleged in the petition was the land pointed out to him by the plaintiff Scrimshire before the contract was executed, and was the only land which the defendant contracted to buy; that the 3.04 acres of land, title to which was tendered to him by the plaintiffs, was not included in the contract, and he did not intend to make any contract for the purchase of the same, for the reason that he at that time owned it and held it by a duly recorded deed, and had owned the same, and had been in possession thereof claiming title thereto, for a number of years prior to the date of the contract and in ignorance of any claim by the plaintiffs. Defendant further alleged that there were two outstanding vendor's lien notes against the land in controversy, both payable to plaintiff Scrimshire or order, each for the sum of $130, one of which was executed by Mrs. Bury, and the other by Mrs. Turner, and that by reason of such outstanding liens plaintiffs have failed to comply with their obligation to convey or tender him a deed to the property free of all liens, and in no event have they any legal right to a recovery of the purchase price of the land as long as such lien notes remain outstanding. Defendant further alleged, in effect, that it was agreed by and between him and the plaintiffs at the time of the conveyance of the 24.05 acres alleged in plaintiffs' petition that his acceptance of that conveyance and the payment of the consideration therefor as recited in the deed should be understood and treated by the plaintiffs as full discharge of all his obligations under the written contract, that agreement having been reached in view of the fact, which was discussed and considered at the time, that defendant himself was the owner of the said 3.04 acres of land, and that the plain-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

tiffs had no title thereto, and by reason thereof defendant would not purchase the same from the plaintiffs.

Judgment was rendered in favor of the plaintiffs for the purchase price of the 3.04 acres of land, but denying them a recovery on the claim asserted for the crop of corn. The defendant has appealed.

The trial was before the court without the aid of a jury, and the following findings of fact and conclusions of law appear in the record, to wit:

### Findings of Fact.

I. "I find that on November 9, 1912, the plaintiffs, W. B. Scrimshire, Katherine Bury, H. G. Bury, and Ida L. Turner owned about 30 acres of land more or less in the W. D. Conner survey, lying on the Trinity river southwest of the city of Ft. Worth and just west of Trinity Park; said 30 acres of land more or less, being the same land in which Ida L. Turner and Katherine V. Bury acquired a two-thirds interest from W. B. Scrimshire by three deeds, viz.: A warranty deed dated October 6, 1911, from W. B. Scrimshire to Ida L. Turner and Katherine V. Bury jointly, by which Scrimshire conveyed, by warranty deed, to Turner and Bury an undivided two-thirds interest in and to about 4 acres out of the A. Voght survey and about 21 acres out of the W. D. Conner survey; also two quitclaim deeds from W. B. Scrimshire, one to Ida L. Turner, and one to Katherine V. Bury, by which Scrimshire conveyed to each of said parties a one-third undivided interest in about 1.90 acres of the W. D. Conner survey; also to each of said parties a one-third undivided interest in about 2 acres of the W. D. Conner survey—the last two tracts of land being the identical land involved in this suit. The two deeds last mentioned bear date September 22, 1911, but were not signed, acknowledged, and delivered to the grantees until October 6, 1911, the same date of the execution and delivery of the warranty deed to an undivided two-thirds interest above referred to."

II. "I find that on November 9, 1912, a written contract was entered into by and between W. B. Scrimshire, Katherine V. Bury, H. G. Bury, and Ida L. Turner, as parties of the first part, and J. L. Bushong, as party of the second part, by the terms of which the parties of the first part contracted and agreed to convey to the party of the second part 30 acres of land more or less out of the W. D. Conner survey, lying on the Trinity river west of Trinity Park, and being the same land a two-thirds interest in which was deeded to Geo. L. Bury and Ida L. Turner on or about October 5, 1911. That by the terms of said contract the parties of the first part were to deed to the party of the second part all of said land by warranty deed, except about 3 acres of same, which was to be deeded to the party of the second part by quitclaim deed. Bushong, the party of the second part, agreed to pay the parties of the first part the sum of $300 per acre for said land, which consideration was to be paid as follows: By the conveyance by Bushong to Scrimshire and Turner and Bury of a house and lot valued at $3,000, situated at No. 664 Calhoun street, in the city of Ft. Worth, and four promissory notes of $1,000, each due on or before one, two, three, and four years after date, and bearing interest at 8 per cent. per annum, the interest payable annually. That Bushong, party of the second part, was to receive with said 30 acres of land more or less the pumping plant and all machinery connected therewith, the house, well, stable, and all buildings situated on said tract, with all the rights and privileges held by the parties of the first part."

III. "I find that in referring to the land to be deeded by the parties of the first part to the party of the second part in the contract of November 9, 1912, which was prepared by J. L. Bushong, the land was referred to as 'the same land deeded to Geo. L. Bury and Ida Turner,' and that a mutual mistake was made between the parties to the contract in the use of the words 'Geo. L. Bury,' which should have been 'Katherine V. Bury.'"

IV. "I find that a short while after the execution of the contract above referred to, to wit, on or about the ——— day of November, 1912, W. B. Scrimshire, Ida L. Turner, Katherine V. Bury, and H. G. Bury, acting under said contract, conveyed to J. L. Bushong, by warranty deed, of the land covered by said contract, 24.05 acres of land, being a portion of the land held in common by Scrimshire, Turner, and Bury, and being a part of the land covered by the contract between the plaintiffs and defendant mentioned in the second subdivision of the findings of fact, above."

V. "I find that, in closing the deal for the 24.05 acres of land at $300 per acre, on the date mentioned the defendant, Bushong, in payment of the consideration for said 24.05 acres of land, conveyed to plaintiffs, Scrimshire, Turner, and Bury, a lot on Calhoun street referred to in said contract at the valuation of $3,000, and gave his notes for the balance of the consideration as follows: Three notes of $1,000, and one note of $1,215, payable to the order of W. B. Scrimshire, and due on or before one, two, three, and four years after date, bearing interest at the rate of 8 per cent. per annum."

VI. "I find that in closing the deal for the 24.05 acres of land, as above stated, that this was not intended as a full and final settlement of the matters covered by the contract, but merely closed the deal between said parties as to the 24.05 acres, the title to which was to be, and was in fact, warranted by plaintiffs to the defendant, and the settlement as to the balance of the land—viz., 3.04 acres—was left for future adjustment between said parties later, without prejudice to the claim of either side; that there was no understanding that the payment for the 24.05 acres should be a final settlement."

VII. "I find that on or about the ——— day of January, 1913, the plaintiffs, W. B. Scrimshire, Ida L. Turner, Katherine Bury, and H. G. Bury, executed and acknowledged a quitclaim deed conveying the 3.04 acres to J. L. Bushong, and that this deed was tendered to Bushong on or about the same date, and he declined to accept the same, and declined to pay for said 3.04 acres at the valuation of $300 per acre agreed upon. I further find that the same deed was tendered to Bushong at the trial of this cause."

VIII. "I find that Geo. W. Bayse is the common source of title as between the plaintiffs and the defendant to the land in controversy."

IX. "I find that Geo. W. Bayse, on March 5, 1897, conveyed the land in controversy to his children, Mrs. Lily O'Connor, Walter Bayse, Mrs. Mary Jones, Florence Bayse, Cordelia Bayse, Oscar Bayse, and Thomas Bayse; that the consideration of said deed was the natural love and affection he had for his said children; that said deed was recorded in the office of the county clerk of Tarrant county, Tex., on March 5, 1897."

X. "I find that on March 12, 1907, Walter Bayse, Mary Cox, joined by her husband, Harvey Cox, Lily O'Connor, joined by her husband, Thomas L. O'Connor, Oscar Bayse, Cordelia Cox, joined by her husband, Chas. Cox, Florence Kaufman, joined by her husband, Henry Kaufman, and Thomas Bayse conveyed the land in controversy to John W. Newman by a warranty deed, and that this deed was filed for record on August 3, 1908, in the office of the county clerk of Tarrant county, Tex."

XI. "I find that on the 21st day of March, 1908, John W. Newman, by warranty deed, conveyed the land in controversy to W. B. Scrimshire, one of the plaintiffs in this suit, and that Newman and Scrimshire had possession of said

property from the date of their respective deeds until November 9, 1912, the date of the contract between the plaintiffs and defendant for the conveyance of same to the defendant."

XII. "I find that prior to the time of the execution of the contract between plaintiffs and defendant, dated November 9, 1912, that the plaintiff Scrimshire and the defendant, Bushong, walked over the identical land in controversy, and that the plaintiff Scrimshire notified Bushong that he (Scrimshire) claimed the 3.04 acres of land in controversy and notified Bushong that he (Scrimshire) had a deed to the same, and that he and his associates were claiming title to the same."

XIII. "I find that on the date of the execution of the contract between plaintiffs and the defendant on November 9, 1912, that the defendant, Bushong, knew that the plaintiffs were claiming the 3.04 acres of land in controversy, and that this was the land referred to in the contract as being the 3 acres to which plaintiffs Scrimshire and others would only execute to defendant, Bushong, a quitclaim deed."

XIV. "I find that the defendant, Bushong, also claimed title to the 3.04 acres of land in controversy under regular chain of transfers to himself, and that the title under which he held antedated the title of the plaintiffs to the land in controversy, and, if this suit properly involved the question as to who has the superior title to the property in controversy, the defendant, Bushong, in the opinion of the court, held the better title, but I find that in the execution of the contract between plaintiffs and defendant heretofore referred to it was the intention of the plaintiffs to sell by quitclaim deed their claim to the 3.04 acres, and the intention of the defendant to purchase the plaintiffs' claim to said property, along with the other land he purchased at the same time, so that his title to the 3.04 acres of land would no longer be in dispute."

XV. "I also find that, in the sale of the house and lot by the defendant, Bushong, to the plaintiffs, the valuation of $3,000 placed on same exceeded the true market value of said house and lot at said time by about $1,200. In other words, the true market value of said house and lot at the date of the exchange, as shown by the evidence, was $1,800, and that, in making said sale and exchange of properties between plaintiffs and defendant, the plaintiffs were disposing of land to a portion of which the title was in dispute, and the defendant was receiving an exorbitant price of his Calhoun street lot in Ft. Worth."

XVI. "I find that the land in dispute between plaintiffs and defendant, by actual survey, amounts to 3.04 acres of land."

XVII. "I find that under the evidence the plaintiffs suffered no damage chargeable to defendant, as claimed in the second count in their petition."

From the foregoing findings of fact I deduce the following conclusions of law:

I. "That under the terms of the contract entered into between the plaintiffs and defendant, dated November 9, 1912, the plaintiffs are entitled to recover of the defendant the sum of $912, which is the value of the 3.04 acres of land at $300 per acre, as fixed by the written contract."

II. "I conclude that defendant is entitled to pay for the 3.04 acres of land upon the same terms he was to pay the purchase price of the other land covered by the contract, and therefore conclude that he should pay cash $210, the further sum of $234 one year from date of judgment, the further sum of $234 two years from date of judgment, and $234 three years from date of judgment, with interest upon said sums at 8 per cent. per annum from the date of judgment, and render judgment in favor of plaintiffs against defendant accordingly."

[1] Appellant insists that he could not be required to accept title to the land in controversy when it was shown that there were outstanding vendor's liens against the same to secure the payment of two notes of $130 each. The evidence does show that Mrs. Bury and Mrs. Turner each executed to Scrimshire a vendor's lien note for $130 in consideration of the conveyance to each of them by Scrimshire of an undivided one-third interest in the land in controversy, due five years after date, which due dates were long subsequent to the institution of this suit, and appellees have cited us to no evidence to show that these notes have ever been paid off, nor who now owns the same, if they are still outstanding. The tendered conveyance by Scrimshire and his coplaintiffs would have the legal effect of extinguishing the lien reserved upon the land if the notes are still owned by Scrimshire. Wells v. Heddenberg, 11 Tex. Civ. App. 3, 30 S. W. 702. Besides, appellant neither pleaded nor proved any recorded transfer of the notes by Scrimshire to any one, nor any facts aside from the records of deeds and mortgages constituting notice to him of such a transfer. In the absence of such notice, he could, after purchasing the land from appellees defeat the liens recovered in the notes upon the plea of innocent purchaser. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54. At all events, the purported lien would be of no effect against the land in the hands of Bushong, since, as found by the trial court, he had a duly recorded title to the property at the time the notes were given, and his title was superior to any title then owned by Scrimshire, which would be notice to any one holding those notes.

[2] The twelfth, thirteenth, and fourteenth findings of fact are attacked, as being unsupported by any evidence. Scrimshire testified that he was in possession of the land, having it under fence before the contract was made; that before the contract was made he walked over the land with Mr. Bushong and pointed out to him where the corners were. He further testified that in that conversation Bushong told him that he understood there was a defect in Scrimshire's title, but that he would take the title in that condition. Bushong testified that in the negotiations with Scrimshire before the execution of the contract Scrimshire claimed to have a deed to the property, and Bushong questioned the validity of Scrimshire's title and claimed title in it himself. This testimony was sufficient to support the findings, notwithstanding the further testimony of Bushong that the property was at that time within his inclosure, and that, when he executed the contract, he did not know that the land in controversy was the three acres referred to in the written contract, and for which plaintiffs only bound themselves to give a quitclaim deed.

[3] By another assignment the contention is made that there was error in the judgment, because plaintiffs did not allege that Bushong agreed to purchase the property with notice of defects in the plaintiff's title. We are of the opinion that the allegation in the petition that defendant agreed to accept a quitclaim deed from plaintiffs to the land in controversy was equivalent to an allegation that he agreed to take chances on their title.

The court's sixth finding of fact is supported by the direct and positive testimony of Mrs. Turner and plaintiff Scrimshire. Hence appellant's second assignment of error is overruled; since the same seems to be predicated upon the contention that the evidence shows that, at the time of the conveyance of the 24.05 acres referred to above, it was agreed between the parties that Bushong's interpretation of the contract, which was, in effect, that it did not embrace the land in controversy, should be accepted by the plaintiffs, and that any further controversy thereafter arising would be adjusted upon that interpretation.

[4] As shown by the evidence already referred to, there was ample support for the finding that Scrimshire had possession of the property in controversy from the date of his deed thereto until the date of the contract. If there was no evidence to show that Newman also had such possession during the time he claimed the same under deed, the error in the finding that Newman did have such possession was harmless; since notice of Scrimshire's possession at the time of the contract was sufficient.

The fifteenth finding of fact, which is also attacked, is supported by Bushong's own testimony, to the effect that the house and lot which defendant conveyed to plaintiffs in part consideration for the 24.05 acres was worth from $1,600 to $1,800.

The sixteenth finding of fact is supported by the testimony of Scrimshire and the plat of the land introduced in evidence.

Other assignments of error complaining of the refusal of the court to reach findings of fact contrary to the findings of fact attacked and discussed already are overruled by reason of the evidence recited in support of the court's findings.

By the sixth assignment it is insisted that the judgment is erroneous, for the reason, that the quitclaim deed from Scrimshire to Mrs. Bury to an undivided one-third interest in the land in controversy was not recorded at the date of the execution of the contract in controversy, and it was not shown that Bushong knew of that deed and the other quitclaim deed to Mrs. Turner to a like interest in the same land, and because Bushong did know of a prior deed from Scrimshire to Mrs. Bury and Mrs. Turner, conveying a tract of 50 acres of land, which included the 24.05 acres afterwards·deeded by plaintiffs to Bushong. By reason of the court's findings of fact Nos. 12, 13, and 14, which are amply supported by the evidence, as above noted, this assignment is overruled

The judgment is affirmed.