## PICKENS et al. v. GLASSCOCK.

### No. 4539.

Court of Civil Appeals of Texas. Texarkana.
Dec. 3, 1934.

Rehearing Denied Dec. 13, 1934.

Prentice Wilson, of Dallas, and Wynne & Wynne, of Longview, for appellants.

Banks & McLemore, Edwin Lacy and H. A. Leaverton, all of Longview, Banks & Banks, of Houston, and George Prendergast, of Marshall, for appellee.

SELLERS, Justice.

On October 2, 1890, Joseph Dial and wife owned 300 acres of land located in Gregg county and a part of the W. H. Castelberry survey. On this date Dial and wife conveyed this tract to T. B. Harris, and the land became community property of T. B. Harris and his wife, Willie A. Harris. In 1905, Willie A. Harris died intestate, and, there being no necessity of administration upon her estate, none was had. There was born to T. B. Harris and Willie A. Harris seven children, six of whom survived Willie A. Harris. One of the surviving children died in 1910, and another in 1918. Both died intestate and without ever having been married. On September 22, 1910, T. B. Harris without joinder of the children conveyed by warranty deed 1 acre of the above-mentioned 300-acre tract of land to the trustees of the Center Point Methodist Church, South, which deed contains this pro-

vision: "It is expressly agreed and understood that in case said above described and conveyed property should be abandoned by said church and not used for church purposes that same shall revert back to and become the property of the grantor herein."

In 1911, T. B. Harris married his second wife, Lou Harris. On October 28, 1919, T. B. Harris executed to Gaines B. Turner, trustee, a 20-year paid-up oil and gas lease on 777½ acres of land in Gregg county. This lease was assigned by mesne conveyance to W. L. Pickens.

On January 15, 1931, all the surviving children of T. B. Harris and his first wife executed to W. L. Pickens an oil, gas, and mineral lease on the 300-acre Dial tract. This lease was duly recorded on January 20, 1931. Thereafter, on January 26, 1931, T. B. Harris and his second wife executed to M. Stein a mineral deed to a $\frac{15}{16}$ interest in all the minerals in the 1-acre tract deeded by T. B. Harris to the church, and on April 3, 1931, T. B. Harris and his second wife executed and delivered to Idaho Oil Company a conveyance of ¼ the minerals in the 1-acre tract deeded by T. B. Harris to the church. Both the M. Stein title and the Idaho Oil Company title were passed by mesne conveyances to C. G. Glasscock. On December 3, 1931, C. G. Glasscock secured a conveyance of a ¾ mineral interest in the 1-acre church lot from its trustees.

This suit was brought by C. G. Glasscock against W. L. Pickens and others in trespass to try title to the mineral interest only in the 1-acre church lot; and in addition to the formal action of trespass to try title, Glasscock specially alleged his title to the minerals by virtue of his title from the trustees of the church and his deeds from M. Stein and the Idaho Oil Company. And, in addition to the above allegations, plaintiff set up title by limitation to the interest claimed by defendants, and further alleged as follows: " * * * That if the defendants, or any of them whose title the defendants hold, ever had any title to the property herein sued for, that they were only co-tenants with T. B. Harris, at the time T. B. Harris sold plaintiff's grantor said property, and that at the time that T. B. Harris executed and delivered said deeds under which plaintiff claims there was other property standing in the name of T. B. Harris on the records of Gregg County, Texas, of similar kind, character and quality of equal value to the property conveyed by the said T. B. Harris by each of the said deeds heretofore mentioned, and that at the time and at all times since the conveyance hereinbefore mentioned under which plaintiff claims dated September 22, 1910, there has been sufficient common property owned by the said T. B. Harris and the defendants, or their grantors, from which the interest of which defendants could be satisfied and carved in partition or otherwise, if in fact such defendants have any interest whatsoever in said property; and this plaintiff says that by reason of the fact that he holds title under said warranty deeds and the further fact that equity can be done only by a partition of the common property so that the plaintiff may have the property herein sued for, and the defendants be compelled to accept property of like kind and value from the remaining common property after the date of the deeds hereinbefore mentioned, that the defendants and their grantors are and should be estopped to claim any interest whatsoever in the property herein sued for, because of the equitable and actual partition heretofore made of the common property by the said T. B. Harris by the said deeds heretofore mentioned under which plaintiff claims; and each of the defendants herein are bound by said partition and ought to be compelled to receive their interest, if any, out of the common property remaining on hand after the execution of said deeds, and each of them, under which plaintiff claims."

The plaintiff further alleged the improvements in good faith to the extent of $20,000. The plaintiff prayed for title and possession of the 1 acre involved, and in the alternative, and in the event the defendants were successful in recovering any interest in the tract, then that plaintiff have judgment for the value of the improvements made in good faith.

The defendant Pickens answered by general demurrer, general denial, plea of not guilty, and specially pleaded his title to the minerals in the 1-acre tract involved by virtue of the Gaines B. Turner lease and the lease to him by the heirs of T. B. Harris and his first wife. He further pleaded that the deed from T. B. Harris to the church was not intended to convey and in fact did not convey any interest in the minerals under the 1-acre tract of land, and, further, that the land had been abandoned for church purposes, and that such title as the church possessed by virtue of the deed executed to it by T. B. Harris had reverted to said Harris. He further alleged that the Magnolia Petroleum Company had been purchasing the oil from the well placed on the property by the plaintiff, and that the plaintiff and the Magnolia

Petroleum Company be required to account to him for his interest in the oil run from the well. Defendant further pleaded that the plaintiff had wrongfully excluded him from the possession of the land and minerals and were appropriating them for his own use and benefit, and refused to account to him for any part thereof; and asked the appointment of a receiver to take charge of the lease with power to collect and preserve the revenues therefrom until the final determination of the rights of the parties thereto. The defendant Pickens prayed for title and possession of the land, a complete and full accounting as between plaintiff Magnolia Petroleum Company and the defendant, or, in the alternative, for the establishment of the interest of all parties and an accounting, the appointment of a receiver and the sale of the property, and the disbursement of the proceeds according to the interests established. Magnolia Petroleum Company answered admitting the purchase of the oil from the well and the amount it had paid the plaintiff and the amount then on hand, and offered to pay the amount on hand to whomsoever the court might decree was entitled to the same.

Mrs. Rosa V. Glasscock, joined by her husband, M. E. Glasscock, was permitted to intervene and adopt the pleadings of the plaintiff, C. G. Glasscock.

The court submitted certain issues to the jury which were answered by the jury, and their answers are, in our opinion, amply supported by the evidence.

The issues submitted and the answers thereto are as follows:

"No. 1: Do you find from a preponderance of the evidence that the Center Point Methodist Church had on the 3d day of December, A. D. 1931, or at any time prior thereto abandoned and ceased to use the one acre of land in controversy in this suit for church purposes? Answer: 'No.'

"No. 2: Do you find from a preponderance of the evidence that the Center Point Methodist Church subsequent to the 3d day of December A. D. 1931, and prior to the 18th day of February A. D. 1932, had abandoned and ceased to use the one acre of land in controversy in this suit for church purposes? Answer: 'No.'

"No. 3: From a preponderance of the evidence find and answer what is or was the reasonable expense of the said C. G. Glasscock incurred in the drilling and equipment of the well on the property in controversy in this suit. Answer: '$11,528.00.'

"No. 4: If you have answered special issue No. 3 by stating any amount then answer: Do you find from a preponderance of the evidence that such expense was incurred by the said C. G. Glasscock in good faith, believing that he had good title to the mineral lease on the land in controversy in this suit? Answer: 'Yes.'

"No. 5: Do you find from a preponderance of the evidence that from the recitals in the lease from T. B. Harris to Gaines B. Turner, Trustee, of record in Volume 39, page 607 of the deed records of Gregg County, Texas, and the other testimony in the case that the parties to said lease intended to include the 300 acres of the Castleberry Survey theretofore conveyed to T. B. Harris by Joseph Dial and wife on the 2d day of October, A. D. 1890? Answer: 'No.'"

Upon the jury's findings the court entered judgment for plaintiffs for the leasehold interest involved, and denied the defendant Pickens any recovery, from which judgment the defendant Pickens has duly prosecuted this appeal.

This appeal involves only the leasehold rights to the 1-acre church lot. Appellant's claim to the mineral interest is predicated upon the Gaines B. Turner lease which appellant acquired by mesne conveyance and a mineral lease from the surviving heirs of T. B. Harris and his first wife. In so far as appellant's claim of title to the interest of T. B. Harris in the minerals is concerned, it must be held that such claim was completely denied by the jury's finding, which was supported by the evidence, to the effect that the 1-acre church lot here involved was not included in the lease executed by T. B. Harris to Gaines B. Turner.

■■ In determining who is entitled to recover the title of the surviving heirs of T. B. Harris and his first wife in the mineral interest involved, it must be remembered that T. B. Harris and the children of his first wife were at all times after the death of the first wife tenants in common of the 300-acre Dial tract of land, and when T. B. Harris conveyed to the Center Point Methodist Church the 1-acre tract here involved off the 300-acre Dial tract, although such deed purported to convey the whole of the title, it in fact was effective to convey only the undivided interest of T. B. Harris. Wells v. Hindenberg, 11 Tex. Civ. App. 3, 30 S. W. 702. The church by its deed from T. B. Harris acquired no right in the 1-acre tract conveyed superior to those possessed by T. B. Harris, except the well-recognized principle

that a deed from one tenant in common to a specific part of the common property will be recognized and the purchaser thereof protected by setting apart to him the specific part so conveyed if this can be done without prejudice to the other owners. Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 935. Appellees seek to apply this rule and have the acre church lot set apart to them, and the trial court evidently granted appellees' title to all' the interest claimed by appellant in the minerals under this acre tract on this theory. But we do not believe the principle applicable in this case. It is true, as disclosed by the record, that the 300-acre Dial tract, of which the acre tract here involved is a part, was all of the same kind and character of land and of equal value in 1910 when T. B. Harris conveyed the acre to the church, and the church, if there had been a partition of the 300-acre Dial tract, unquestionably could have enforced its right to have the acre set apart to it, and the heirs required to take other land of T. B. Harris in its stead. The right possessed by the church to have the acre set apart to it but never enforced no longer existed since the acre of land involved at the time of the trial of this case, as disclosed by the evidence, was valuable oil-producing land, and there is no evidence that there is land of equal value belonging to T. B. Harris which could be set aside to the surviving heirs, at least no other land is involved in the appeal from which such a partition could be decreed. Appellant, therefore, is entitled to recover the interest of the surviving heirs of T. B. Harris and his first wife in the leasehold mineral interest in the acre tract of land involved; and we find no evidence of acts or conduct on the part of appellant or his grantees which would give appellees title by estoppel to the mineral interest claimed by appellant.

The jury having found that appellees acted in good faith in drilling the oil well on the property, appellant in the partition of the leasehold estate is entitled to the value of his proportionate part of the minerals extracted, together with legal interest from the dates of taking; but he is chargeable with his proportionate part of the reasonable cost of the well and the expenses of operating it. Broadway v. Stone (Tex. Com. App.) 15 S.W.(2d) 230; Texas & Pacific Coal & Oil Co. v. Kirtley (Tex. Civ. App.) 288 S. W. 619.

In accordance with the views expressed, the judgment of the trial court will be reversed in so far as it denies appellant any recovery for a 99/240 interest in the 7/8 leasehold estate, and judgment is here rendered in favor of appellant for a 99/240 undivided interest in the 7/8 leasehold estate; and this cause will be remanded for partition in accordance with interest adjudged appellant and appellees in such estate.