Fox v. Windes.

## Fox *et al., Appellants,* v. WINDES.

### Division Two, March 18, 1895.

1. **Deed of Correction:** ACCEPTANCE: ADVERSE POSSESSION. Where a father conveyed a part of his land to his two sons, and afterward executed to them a deed to a different part of the land, which recited that it was made in lieu of the first deed on account of a misdescription of the land contained in the first, and the second deed was accepted by the sons and the land conveyed by it afterward sold by them, the father's possession, after his execution of the second deed, of the land conveyed in the first deed will be held to be adverse to the sons.

2. **Ordinary Course of Business:** SALE OF LAND: PRESUMPTION: DEED. One who sold land will be presumed to have made a deed to the purchaser, such being the usual and ordinary course of business.

3. **Deed of Correction:** ACCEPTANCE: ESTOPPEL. The acceptance by sons of a deed of correction executed by their father in lieu of a prior deed which misdescribed the land intended to be conveyed, and the sale by them of the land conveyed by the second deed, will estop them from afterward claiming title to the land conveyed in the prior deed.

4. ——: ——: ——. The doctrine of election or estoppel would apply in such case, regardless of whether the second deed was intended to correct a mistake in the first, or was the result of a subsequent desire to make a change in the land conveyed.

5. **Election.** One who accepts a benefit under an instrument must adopt the whole of it, conforming with all its provisions and renouncing every right inconsistent with them.

6. **Husband and Wife:** DECLARATIONS OF HUSBAND: EVIDENCE. The declarations of a husband are not admissible against his wife for the purpose of binding her or her land held under the married woman's act of 1865.

7. **Deed of Correction:** ACCEPTANCE: ELECTION: ADVERSE POSSESSION. Where sons elected to accept a deed of correction by their father, conveying to them different land from that conveyed in a prior deed, and subsequently sold the land called for in the corrected deed, the fact that the father failed to remit to them in another state all of the purchase money given him by their grantee, will not affect the question of their election, or of the father's adverse possession of the land described in the first deed.

8. **Practice in Supreme Court:.** CORRECT FINDING: ERRONEOUS INSTRUCTIONS. The supreme court will not disturb the finding of the trial court, where the verdict is the only one that could have been rendered under the evidence, notwithstanding erroneous instructions or declarations of law may have been given.

*Appeal from Barry Circuit Court.*—HON. J. C. LAMSON, Judge.

AFFIRMED.

On November 7, 1891, plaintiffs brought ejectment for the southeast quarter of the southeast quarter of section 27, township 22, range 28. They are the children and heirs at law of John M. Lillard. The tract in litigation is part of one as set forth in the subjoined plat:

James M. Lilliard is the common source of title, and the former owner of the whole land described in the plat. He had three children, John M., Pleasant V.

and Sarah M., commonly called "Maggie." On the sixth of March, 1867, James M. conveyed to his two sons, John M.. and Pleasant V., land in the southeast of the southeast and the southwest of the southeast, section 27, township 22, range 28 on the north side of line marked on plat. And it *seems* that on March 4, 1867, he had previously conveyed to his daughter "Maggie," the northwest of the northeast of section 34, township 22, range 28. Though the deed evidencing this fact was not produced, plaintiffs admitted the fact on the trial. And it was admitted also, that the deed records of Barry county were burned in 1872.

On the tenth day of March, 1869, James M. conveyed to his two sons, John M. and Pleasant V., the following land, to wit: The southwest of the southeast, section 27, township 22, range 28, and the northwest of the northeast of section 34, township 22, range 28. In the concluding portion of this deed is set forth: "That this deed is made in lieu of a certain deed made and executed by us before Ezekiel H. Cave, justice of the peace, on the sixth day of March, 1867, and recorded in book 'H,' pages 125 and 126, in the recorder's office in Barry county, Missouri, by G. L. Carlin, recorder, in which said deed the numbers of the land are incorrectly given, making us convey the northwest quarter of the northeast quarter of section, township and range aforesaid to Sarah M. Lillard."

On the same day as last mentioned, James M. executed a conveyance to his daughter, Sarah M., by which he conveyed to her the southeast of the southeast of section 27, township 22, range 28. In the concluding portion of this deed also, it is recited: "And we, by these presents, further state, this deed is made in lieu of a certain deed made and executed by us, before Ezekiel H. Cave, justice of the peace, on the fourth day of March, 1867, and recorded in book 'H,'

pages 128 and 129, in the recorder's office, in Barry county, Missouri, by G. L. Carlin, recorder. In which said deed, the numbers of the land are incorrectly given, making us convey the southeast quarter of the southeast quarter of section, township and range aforesaid, to John M. Lillard and Pleasant V. Lillard." Both of these instruments were recorded April 20 next after their execution.

John M. had been South, in the army, and finally drifted to Texas, where he married, but returned on a visit to his old home in Barry county, in 1869. While there he was heard to converse with his father, James M., as the two were walking along the tract in controversy, and the father said to the witness in the presence of John M.: "I have given my land to my children. John wants to sell out, and the land I have made to John, if he sells it, interferes with the farm, so I can't make a support, and I want to change it so he can have the west end next to town and sell it and leave the east for me and Betsey our lifetime; then Maggie gets it."

The witness further testified that: "This was along this tract of land, that he and his son John were having the talk about making the change. It was the same land that Mr. Windes now claims to own." The land James M., the father, wanted to deed to the boys, was the west part of the land next to town, "and hold to this on the east so he could make a support for him and Aunt Betsey." That, during the conversation, John M. said "he did not want to disturb the farm so pa and ma could not get a support;" that, right away after the conversation in 1869, the land was sold to Booth, and since that time Booth and those to whom he subsequently sold, have held possession of it ever since; that John M. did not remain in the county

long; that the money the land was sold for to Booth went to Texas.

Another witness, Dr. Long, testified that John M. and Pleasant V., his brother, owned the southwest of the southeast of section 27, and the northwest of the northeast of section 34, township 22, range 28. This, of course, must have been after the deed of correction of April 10, 1869, was made, because Dr. Long said that, "I bought the land of Booth, who bought of John and Vernon Lillard." Asked to state what he knew about the sale of the land of which he had mentioned John M. and Pleasant V. (sometimes called Vernon) as the owners, to wit, the southwest of the southeast of section 27, and the northwest of the northeast of section 34, township 22, range 28, this witness said: "John Lillard came to me and asked me to assist him in selling this land to Booth. Subsequently James M. Lillard came to me and asked me to assist him to sell the land for the boys, meaning John and Vernon Lillard. I spoke to Booth with the view of encouraging the sale, and later Booth bought the land. I think he paid $800; and Booth built a house on same land, and I bought seventy-seven acres of the same land from Booth, and paid him $1,500; and Tony Patterson (colored) bought three acres of same land. When I was trading for this land, I asked Mr. Lillard about the title to this land. He told me the southwest quarter of southeast quarter, section 27, and northwest quarter of southeast quarter, section 34, township 22, range 28, had belonged to the boys (referring to John and Vernon Lillard); that there had been a mistake made in deeding the land to them, but that he had corrected the deed. I understood from his conversation that he had by mistake deeded them the other land." This witness further testified that when John Lillard was in Barry county wanting to sell the land,

he said he could make more out of the money than he could out of the land.

Dr. Long further testified that in 1872 or 1873, James M. borrowed rails of him to make a partition fence between the land in controversy and his land, and that this fence remained there so long as witness owned the land; that, at the time James M. borrowed the rails, he said he was fixing up this land (that in controversy) "for the old woman and the baby" (his daughter Maggie); that either James M. Lillard or James Park, since his marriage with Maggie, have exercised acts of ownership over the forty in question, some fifteen or sixteen years. It was also in evidence that James M. died in 1882, and that since that time, and ever since the making of the deed of correction in April, 1869, James M. Lillard and those claiming under him have had peaceable and unquestioned possession of the premises in dispute as owners, down to the time of the present action; that no. claim was ever set up to the premises, either by John M. or Pleasant V. during their lives; that the latter died single, while one of plaintiffs was a small child, having fled from Barry county in consequence of killing Sparkman.

*Frost & Wear* and *H. C. Pepper* for appellants.

(1) Appellants established the unquestioned paper title from James M. Lillard, the admitted common source of title, which wiped out every other title in the case. This gave them the legal seizin and possession; and upon this title, they had the right to rest, throwing on the defendant the burden to defeat it by some means known to law. *Husley v. Wood*, 55 Mo. 252; *Parsons v. Parsons*, 45 Mo. 265. (2) James M. Lillard, the common source of title, having conveyed the premises to his sons, John M. and Pleasant V. by his

warranty deed in 1867, the title passed to and vested in the grantees, and no subsequent act or intention on his part, could divest it. *Parsons v. Parsons*, 45 Mo. 265; *Hall v. Hall*, 107 Mo. 101. (3) For this reason the court erred in allowing defendant to read in evidence the subsequent deeds of James M. Lillard, dated April 10, 1869, in which he attempted to convey the land in controversy to his daughter, Sarah M. These deeds were utterly void, and were annihilated by the deed of 1867. See authorities cited under second point. And the recitals therein, as to the mistake, were incompetent to prove such mistake. *Fine v. St. Louis Public Schools*, 30 Mo. 166. (4) The defendant's plea of estoppel is untenable. The answer itself does not contain within its allegations, a single element of estoppel, and, even if it did, the evidence on the part of defendant annihilates any such claim. If there is any estoppel in this case, it is the defendant, and not plaintiffs, who is estopped. *Blodgett v. Perry*, 107 Mo. 263; *Eitelgeorge v. Ass'n*, 69 Mo. 52. (5) There was not adverse possession in the case; the possession of James M. Lillard was permissive. He did not disclaim the title of his sons and assert title in himself. *Meier v. Meier*, 105 Mo. 411; *Budd v. Collins*, 69 Mo. 129; *Forder v. Davis*, 38 Mo. 107. (6) Admitting that J. J. Park's possession was adverse, yet it had not ripened into a title at the time this action was brought, in 1891. R. S. 1889, sec. 6764. (7) There is not a word of evidence showing that John M. and Pleasant V. had any notice that their land was being held adversely, by anyone. And the deeds of Jas. M. Lillard, in 1869, and the mortgages by Park and wife, were not notice to them of adverse claims. The owner of land is not required to watch the recorder's office to ascertain if someone is filing deeds and mortgages on his land. *Meier v. Meier*, 105 Mo. 411. (8) Even if James M. Lillard's

possession were adverse and had ripened into a good title at the time of his death; yet his heirs (including these plaintiffs) would have inherited his interest. *Budd v. Collins*, 69 Mo. 129.   (9)  The declarations of law given for respondent were erroneous.

*Norman Gibbs* and *T. M. Allen* for respondent.

(1)  *First.*  The finding was one of fact and was supported by evidence, and this finding will not be reviewed by the appellate court.  *Krider v. Miller*, 99 Mo. 145; *Rothschild v. Railroad*, 92 Mo. 95; *Gumm v. Hubbard*, 98 Mo. 311.  *Second.*  The testimony of A. S. Long, Isaac M. Coward, and the actions of John M. Lillard conclusively support that finding of the trial court.  *Third.*  There was no testimony adverse to that finding.  *Fourth.*  That finding of fact concludes all right of recovery by plaintiffs, whose sole claim is as heirs of said John M. Lillard.   (2)  The action of the court in giving the third declaration of law asked by defendant, as to ten years adverse possession, was fully sustained by the evidence.  R. S. 1889, sec. 6764; *Nelson v. Brodhack*, 44 Mo. 596, and all decisions of this court on above section; *Long v. Company*, 107 Mo. 304; And it is immaterial whether plaintiffs knew of such adverse possession.  *Scruggs v. Scruggs*, 43 Mo. 142; *Carondelet v. Simon*, 37 Mo. 408.   (3)  The deed from James M. Lillard and wife to Sarah M. Lillard, was duly recorded in a few days after it was executed; and no formal delivery of the deed to her was necessary. *Kane v. McCown*, 55 Mo. 181; *Lumber Co. v. Anderson*, 13 Mo. App. 429.   (4)  "A conveyance of an entire tract of land by one tenant in common, as a sole owner, amounts to an ouster of his cotenants, and the statute of limitations commences running in favor of his grantee from that time."  *Long v. Stapp*, 49 Mo. 506.  If

this be true, then certainly the conveyance of the land in controversy, by James M. Lillard and wife, by deed of full warranty, to Sarah M. Lillard, on April 10, 1869, while he was in the sole possession and actual occupation thereof, and his recording said deed was an open, public and notorious denial and ouster of all right or claim of John M. and Pleasant V. Lillard, and the statute of limitations commenced running against them from that day. (5) Respondent submits that plaintiffs ought not now to be permitted to maintain this action on account of the staleness of their claim, said claim having slept for over twenty-four years, and until all parties to the pretended deed were dead and with no disability to prevent its prosecution—if it had any merit and innocent parties having in the meantime given credits, and invested their money, on their faith in the title and claim of those who were in the actual possession under color of title and claim of right. *Collins v. Rogers*, 63 Mo. 515; *Stephenson v. Saline County*, 65 Mo. 420; *Dickerson v. Colgrove*, 100 U. S. 578; *Ford v. Church Society*, 120 Mo. 515. (6) The declarations of a husband are not admissible against his wife for the purpose of binding her or her land held under the married women's act of 1865; nor are they admissible against her grantee. (7) The appellate court will not disturb the finding of the trial court where it is the only one that could have been made under the evidence, and this is true, although erroneous declarations of law were given. *Nicholson v. Golden*, 27 Mo. App. 132; *Arnold v. Jewett*, 125 Mo. 241; *Fitzgerald v. Barker*, 96 Mo. 661.

SHERWOOD, J.—Upon the foregoing facts detailed in evidence, we have no doubt that defendant was entitled to judgment. There was no warrant in the evidence on which to base the conclusion that the pos-

session of James M. Lillard was in any sense *"permissive"* after he had made the two reciprocal deeds of correction of April 10, 1869, and especially after the acceptance of one of them by John M. Lillard, whom we shall presume after such a lapse of time was acting for his brother, Pleasant V. And it will be presumed, also, that, John M. and his brother having sold the land to Booth, they executed a deed in conformity thereto; for this was in the usual course of business. *Fitzgerald v. Barker*, 85 Mo. 13.

The deed of correction made at the time indicated, followed by an acceptance and sale of the land by John M. for himself and brother, assisted by his father and Dr. Long, as well as the presumption last aforesaid, constitute evidence, of the most cogent nature, of a ratification of the correction made in the two deeds. In such circumstances, the possession of the father, James M., was no more "permissive," as to the rest of the land, than if he had never in the first instance made a deed to his sons. His possession was, therefore, as much adverse toward them as toward anyone else, and the usual consequences would of course attend such adverse possession.

But another view may be taken of this matter which will result as unfavorably to plaintiffs as the former one, to wit:  John M. Lillard, by accepting for himself and brother the deed of correction, made the acceptance at the time and the sale thereafter in a manner that precluded either of them from subsequently asserting anything to the contrary of what might be reasonably inferred from those acts; in a word, that acceptance and that sale constituted *an election* and a *tacit relinquishment to the property in suit*.

On this topic a learned author says:  "The doctrine of election is founded upon the principle that there is an implied condition, that he who accepts a benefit

under an instrument must adopt the whole of it, conforming with all its provisions, and renouncing every right inconsistent with them. The principle is recognized and established in this country almost precisely the same as in England, and rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that anyone who claims an interest under an instrument, is bound to give full effect to that instrument as far as he can: A person can not accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part; and this applies to deeds, wills, and all other instruments whatsoever." 2 Herman on Estoppel and Res Judicata, sec. 1028, p. 1156. See, also, 2 Story's Eq. Jur. [13 Ed.] sec. 1080.

This doctrine of election which prevents the assertion of repugnant rights, is but an extension of the law of equitable estoppel. 1 Herman on Estoppel and Res Judicata, p. 11. And the estoppel was properly pleaded in the answer.

It is proper to say here that it is immaterial whether the alteration in the deeds was the result of original mistake or of a subsequent desire to make a change in the land conveyed, and would not affect the result already announced as to the application of the doctrine of election.

There was no error in refusing to let Parks give *his opinion* as to the interest of John M. Lillard in the litigated premises. His wife held under the married woman's act of 1865, and no declarations of her husband could bind her or the land, even while he was living on the premises with her. His sole deed could not affect her interests in the land, and certainly his "word of mouth" could not do more than his deed. *Mueller v. Kaessmann*, 84 Mo. 318, and cases cited. If the declarations or opinion of Parks were inadmissible

while *living on* his wife's land, as to the nature of her title, then *a fortiori* were they incompetent after her possession had ceased, and they were attempted to be used against his wife's grantee.

The court, at the conclusion of the case, made this finding: "The court finds from the evidence in this case that John M. Lillard assented to and approved of the making the two deeds, dated April 10, 1869, read in evidence in this case, by his father, James M. Lillard, and acquiesced in the change intended to be made by James M. Lillard by the said deeds of April 10, 1869, and that plaintiffs are not entitled to recover in this action."

This finding was not as comprehensive as it should have been, inasmuch as it did not embrace within its scope the acquiescence or election of Pleasant V. Lillard, of which there was sufficient evidence as already stated. His death, it appears, occurred in October, 1869, and it is now claimed that, as he died a single man, John M. Lillard inherited a portion of his brother's interest, and as his father died in 1882, and his mother in 1886, he inherited a portion of their interests in the disputed premises. Respecting this claim, it may be said that this cause was not tried on that theory in the lower court. Moreover, the considerations heretofore adverted to of election and of the statute of limitations, effectually cut off any right which those claiming under Pleasant V. Lillard had. Under this view, the point that the finding of the court lacked in comprehensiveness becomes immaterial.

Nor does it affect either the question of election or of the statute of limitations that all the money paid by Booth to James M. Lillard, for the land the latter had deeded to his sons on the tenth day of April, 1869, was not transmitted by him to his sons in Texas; the question of the disposition of the proceeds of such sale was

one between the father and his sons, just as it would have been between any other agent and his principals. *Long v. Mining Co.*, 68 Mo. *loc. cit.* 433.

It is unnecessary to discuss the declarations of law given or refused. Under the evidence, the finding could not have been otherwise, and, when this is the case, it is our custom to treat errors in giving or denying declarations of law or in giving or denying instructions, as harmless. *Fitzgerald v. Barker*, 96 Mo. 661; *Greer v. Bank*, 30 S. W. Rep. (Mo.) 319 and cases cited. Holding these views, we affirm the judgment.   All concur.