SEUREAU v. FRAZER et al. (No. 596.)

(Court of Civil Appeals of Texas. El Paso. Nov. 16, 1916. Rehearing Denied Dec. 13, 1916.)

1. DEEDS ⊂⇒111 — PROPERTY CONVEYED — CALLS FOR METES AND BOUNDS.

Where there is no suggestion that calls for courses and distances given in a deed are not correct, the deed conveys all the land embraced within its lines, though it is more than the amount stated in the deed and intended to be conveyed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 309–315, 334, 335; Dec. Dig. ⊂⇒111.]

2. DEEDS ⊂⇒118 — MISTAKE — EVIDENCE — QUANTITY OF LAND.

A deed conveying lands bounded by courses and distances and testimony as to a calculation of the acreage thereby embraced is prima facie sufficient to establish the quantity conveyed.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. ⊂⇒118.]

3. REFORMATION OF INSTRUMENTS ⊂⇒19(1)— MISTAKE—QUANTITY OF LANDS—SUBSTANTIAL EXCESS.

Where a deed stated the acreage conveyed as 157.3, which was the acreage intended, whereas the courses and distances embraced an acreage of 184.6, the excess is sufficient to be material and such that equity will correct, if made by mutual mistake.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74, 76–78; Dec. Dig. ⊂⇒19(1).]

4. REFORMATION OF INSTRUMENTS ⊂⇒43—MISTAKE—BURDEN OF PROOF.

The burden is on the grantor to prove that the excess of land conveyed over that intended was such that a court of equity would correct it, if made by mutual mistake.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 154; Dec. Dig. ⊂⇒43.]

5. LIMITATION OF ACTIONS ⊂⇒199(1) — MISTAKE—DISCOVERY—EVIDENCE.

In trespass to try title based on mistake in a deed of conveyance, evidence held sufficient to require the issue whether the mistake was not and could not have been by reasonable diligence discovered prior to the time when the action would be barred by limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 727; Dec. Dig. ⊂⇒199(1).]

6. VENDOR AND PURCHASER ⊂⇒215—LIMITATIONS OF VENDOR—MISTAKE—RECOVERY AGAINST REMOTE PURCHASER.

A vendor who by mutual mistake conveyed to the purchaser more land than was agreed upon at a fixed price per acre can recover from remote grantees who took from the purchaser under deeds containing the same mistake at a fixed price per acre.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 449–452; Dec. Dig. ⊂⇒215.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Trespass to try title by C. S. L. Seureau against S. D. Frazer and others. Judgment for the defendants on directed verdict, and plaintiff appeals. Reversed and remanded.

Andrews, Streetman, Burns & Logue, of Houston, for appellant. A. R. & W. P. Hamblen, of Houston, for appellees.

WALTHALL, J. This suit was brought by appellant, Mrs. C. S. L. Seureau, a feme sole, against S. D. Frazer and C. Glen Nichols and wife, in trespass to try title, to recover an undivided interest in a certain tract of land in Harris county, and, in the alternative, for general relief. Frazer answered by general demurrer; not guilty; that he is an innocent purchaser for value without notice or knowledge of any of the facts pleaded by appellant; the statutes of limitations of two, four, and five years. Nichols and wife disclaimed, and at the close of the evidence the court instructed the verdict in favor of Frazer.

The assignments and the propositions thereunder are to the effect that the undisputed evidence offered by the appellant shows that as a result of a mutual mistake upon the part of appellant and Lomax appellant had conveyed to Lomax a portion of the Wm. Hardin league of land, described by metes and bounds, containing 27.35 acres in excess of the quantity believed and stated in the deed thereto to have been contained within said metes and bounds; that appellee held said tract of land under mesne conveyances from Lomax; that in each sale of said land from appellant to Frazer such sales were by the acre, and that each purchaser had paid the agreed price per acre for only 157.3 acres, and that no purchaser had paid anything for said excess; that said mutual mistake as to the quantity of land embraced in the deeds had continued and existed in the instance of each sale from appellant down to and including appellee Frazer; that the mistake was material was not discovered until about one year before the filing of suit, and could not have been discovered sooner; that

the facts were sufficiently shown to require the submission of the case to the jury.

The contentions of appellee Frazer are that, there being no privity of contract between appellant and appellee, and no mutuality of mistake shown in so far as appellee is concerned, appellee could not be affected by any mistake made in the sale between appellant and Frazer's remote vendor; that appellant had not discharged the duty or burden of showing an excess in the acreage conveyed; that the conveyance of the land from appellant was by metes and bounds, and that the description so given would control any reference in the deed to quantity, or in the number of acres contained therein, and in the absence of actual notice disclosed by the record that it was a per acre sale, appellee would not be affected; that the statute of limitation of four years barred the cause of action.

The evidence offered by appellant consisted of a deed from appellant to Lomax of date October 29, 1907; deed from Lomax to Nichols; deed from Nichols and wife to appellee Frazer; the plats and field notes made by Pennington and Peppercorn; the agreement as to the testimony of Nichols; and the evidence of Kellett and Peppercorn. Appellant also put in evidence the deed from appellant to Farrell, and the deed from appellant to Huckley; the dates of these last two deeds being the same as appellant's deed to Lomax. The three deeds (Lomax, Farrell, and Huckley) convey defined portions of the Wm. Hardin survey, which, at the date of the deeds, was owned by appellant. The deeds from appellant to Lomax, from Lomax to Nichols, and from Nichols to appellee Frazer, except as to the dates and considerations, are in the same form, and describe the land conveyed as follows:

"All of that certain tract of land in Harris county, Tex., a part of the Wm. Hardin league, described as follows: Beginning on the S. bank of Buffalo Bayou at the N. E. corner of a 76½-acre tract of land, a part of the Wm. Hardin league conveyed by G. N. Phelps and C. D. Phelps to Peter Blike on the 16th day of March, 1883, by deed recorded in volume 25, p. 613, of Deed Records of Harris County, Tex.; thence S. with the E. line of Blike tract 5,874.5 feet to a stake for corner; thence E. 1,325.6 to iron stake for corner; thence N. 607 to a 12″ pine on S. bank of Buffalo Bayou marked X and at the foot of which is set a 2″ iron pipe for corner; thence up said Bayou with its meanders [giving the meanders by courses and distances] to the place of beginning—containing 157.3 acres of land."

The consideration stated in the deed from appellant to Lomax is:

"The sum of $2,949.20 to me paid and secured to be paid by W. J. Lomax, as follows: [Then follows the statement of the cash and time payments.]"

Kellett, appellant's son-in-law, testified that in 1907 and 1908 he was attending to appellant's business; that he had placed the property embraced in said deed with Nichols, a real estate agent, who found the purchasers named; that arrangements were made with the purchasers named for a surveyor, Pennington, to survey off 100 acres for Huckley, 100 acres for Farrell, and the balance to Lomax; that the surveyor, Pennington, was to ascertain the acreage in the tracts; that the surveyor went out to the land for the purpose of dividing it and computing the acreage in the tracts, and, when he had completed his work, furnished witness with a plat thereof; that the field notes to the tract described in the Lomax deed were furnished by the surveyor, Pennington; that deeds were then prepared and read over by the witness, who took them to appellant. Appellant could not read or speak English, but the deeds were translated to her by her daughter. Witness did not have any knowledge with reference to the acreage contained in the tract deeded to Lomax, and appellant had nothing to do with the transaction other than as stated. The trade witness had with Lomax was to sell Lomax the land at $18 per acre, and at the time he dealt with Lomax he dealt with him on the basis of the acreage which Pennington had furnished, as stated in the deed. Later Huckley claimed that he did not have 100 acres in his tract, and witness then employed Surveyor Peppercorn to survey the land and make another drawing. Until Peppercorn notified witness of the mistake, witness had no reason to believe and did not know that a mistake had been made in the excess acreage deeded to Lomax, and had he known it he would not have had appellant to sign the deed; that he (witness) was unable to figure the acreage of the tract of land meandered by the stream; that at the time appellant executed the release of the vendor's lien to Lomax, witness had no further knowledge about a mistake, his knowledge of the mistake obtained through Peppercorn having been obtained subsequent to the release.

Peppercorn testified that he was a civil engineer and surveyor, that the blueprint of the work done by Pennington was given to him, and that he figured after that, and identified the blueprint handed him as the one that Pennington had made. Witness computed the acreage of the Lomax tract as described in the Lomax deed and made a plat of the work which he did, and produced the plat, and said:

"This plat of mine shows, according to Mr. Pennington's figures, that in the Lomax tract there were 184.65 acres of land. This shows the acreage contained within the boundaries of that tract as designated there by Mr. Pennington, and as I say, I found it to contain 184.65 acres. The work which I did was carefully done."

Witness checked the Huckley tract; found there were 93.85 acres in it. The tract of land is bounded on a stream. It would be difficult for one not skilled in such work to compute the acreage. It was in March, 1912, that he did the work. The primary purpose of his work was to give Huckley his acreage;

had Pennington's blueprint when he made his survey. The field notes and meanders were on the blueprint. Witness began his survey—"at the southwest corner of the Lomax in the Wm. Hardin league. Then I ran east and checked the distance there as Pennington had given them and put mine with it, running from the southwest corner of the Lomax in the Wm. Hardin, running east 3,195 feet. That brings me to the southeast corner of the J. C. Farrell 100 acres. Then I ran from the southeast corner of the Huckley north 5,739 feet, and that holds out with Mr. Pennington's line. You see there was a mistake made, and when I added to the west of the Huckley tract 44.6 feet which would make the exact 100 acres. It was in that way that I arrived at the correct acreage, and that is all I did. I took Mr. Pennington's map and ran those lines as I have stated; I didn't do anything further. I accepted the meanders as Pennington had run them, and they held out. I accepted those meanders on the entire north end of the whole three tracts. I didn't test the meanders Pennington had made on the ground; I tested them by figures, and, so far as I know, I don't know whether he is correct or not, on the ground. As a surveyor, taking the Pennington map showing the turn of this Buffalo Bayou, I would say that it is impossible for any one to get the exact acreage in the Lomax tract without carefully meandering the bayou. You have to meander the bayou, certainly. * * * I did not run the Lomax tract on the ground myself; I came down here, you know, a short distance and chained that, just the south line is all. I did not measure any other line except the south line. This southwest corner was pointed out to me."

The witness Peppercorn also said that he did not have the deeds with him when he made his survey, and said that:

"Here in this deed to Lomax it begins on the south bank of Buffalo Bayou at the northeast corner of the 76-acre tract, etc.; thence south with the Blike tract 1,574.5 feet to a stake; thence east 1,325 feet to a stake; thence north 6,007 feet to a stake on the bayou thence up the bayou by metes and bounds, giving an acreage of 157.3 acres, and it is, or should be, 184.65 acres. You see, if I take this here, the width of it there, and go over there leaving that, leaving the meanders out altogether it makes, then, about 175 acres. I can take my pencil and figure that for you if you give me the dimensions: I have here 1,325 feet in width and 5,875 feet on one side and 6,007 feet on the other side; that is 5,874.5 feet (he figures it). Then that would be from here over there, throwing the meanders out altogether, not figuring them, that would make it 178.8 acres. That is the simplest kind of calculation we have in land matters, the plainest and simplest. Any man that has the least idea of calculating land acreage could do that. Knowing the distance, the width and the length of a piece of land, it is the simplest and easiest calculation in land matters."

An agreement is in the record to the effect that Nichols, if present, would testify that at the time he purchased the Lomax tract the transaction was had upon the basis of a per acre sale, the consideration being arrived at by figuring the acreage found by Pennington to be 157.3 acres, and that when he (Nichols) sold to Frazer, the transaction was on a per acre sale, the acreage basis being 157.3 acres, and that he believed in each transaction the tract contained only 157.3 acres of land.

We think it sufficiently appears that all of the parties in the several sales of the Lomax tract, at the time of the execution of the deed by appellant to Lomax, and at the time of the execution of the deed from Lomax to Nichols, and at the time of the execution of the deed from Nichols to Frazer, understood and believed and that the sales were based upon the belief of vendors and vendees that the tract contained 157.3 acres of land, and that such belief continued to prevail until the complaint of Huckley that he had not received in the conveyance to him the quantity of land called for in his deed. This complaint caused the resurvey and platting by the surveyor, Peppercorn, when and by whom it was reported that there was an excess in the Lomax tract of 27.35 acres. The question of fact presented here is: Did the evidence require the submission of the case, including the issue as to the exact quantity of land in the Lomax deed? The court withdrew the case from the jury, and by so doing determined either that appellant ought not to recover for any excess, as a matter of law, or that the evidence was not sufficient to submit to the jury the issue of fact of any excess in the acreage conveyed.

[1] The appellee, Frazer, claims directly under one and remotely under two deeds, all of which contain the same description by metes and bounds. The deeds give the lengths of the various lines of the tract and give each meander of the stream bounding the tract. Appellee holds title under these deeds to all of the lands embraced within the calls and distances given in the deeds. The office of a description in a deed or other writing is not to identify, but to furnish means of identification. Holley v. Curry, 58 W. Va. 70, 51 S. E. 135, 112 Am. St. Rep. 944, and cases there cited. The lines of a grant must be established by the calls in its field notes. Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931. There is no suggestion in the pleading or proof of a mistake in the calls for course and distance in the deeds, and they must stand as made. The calls and distances given in the deeds, as does the testimony of the witness Peppercorn, show that a greater acreage than 157.3 is embraced therein. The exact acreage included within the calls of the deeds is only a matter of calculation; the distances being given in each of the deeds.

[2, 3] Peppercorn made the calculation and stated the acreage to be 184.65 acres of land conveyed by the deed. This was sufficient to show prima facie that appellant had conveyed and that appellee Frazer held title under the deeds to 184.65 acres of land, whatever might be the actual acreage on the ground. If the deeds did not convey a tract of land of the dimensions and the boundaries of which were of the courses and distances stated therein, such would be a matter of defense. But we are of the opinion that the deeds with their calls and distances, until rebutted,

would be sufficient, of themselves, to show the conveyance of a tract of land with boundaries of the courses and distances as stated therein. The survey made by Pennington was not attacked by the evidence, other than to show the incorrectness of his estimate as to the acreage. If the deeds are effective to convey the title, it seems to us that their calls for courses and distances would be sufficient prima facie to show the acreage conveyed. The excess in the acreage is sufficient to be material, and such that a court of equity will correct if made by mutual mistake.

[4, 5] The burden is on the appellant to show the fact that there is such excess in the acreage conveyed in the Lomax deed that a court of equity would correct it if made by mutual mistake. The discovery of the mistake, if there was a mistake as to the acreage, under the pleading and proof, was at such time as to prevent the bar of the statute of limitations, if the grantor could not sooner have discovered the mistake by the exercise of proper diligence. At any rate, the facts are such as to require that the issue be submitted to the jury. Oldham v. Medearis et al., 90 Tex. 506, 39 S. W. 919; Isaacks v. Wright, 50 Tex. Civ. App. 312, 110 S. W. 970.

[6] The question of law remains: As between the parties to this suit, conceding a mutual mistake as between appellant and Lomax as to the acreage in the deeds, and, for the purpose of the question, conceding that the evidence was sufficient to show the excess in quantity claimed by appellant, can the mistake be now corrected as between appellant and appellee, a remote vendee? It is evident that none of the parties in any of the sales knew the acreage, and that all accepted as a correct estimate the statement made by Pennington. The rule in this state has long been that, whenever the excess is palpable and unreasonable and such is shown not to have been in contemplation of the parties, relief will be granted. Smith v. Fly, 24 Tex. 349, 76 Am. Dec. 109; O'Connell v. Duke, 29 Tex. 312, 94 Am. Dec. 282; Lancaster v. Richardson, 13 Tex. Civ. App. 682, 35 S. W. 749; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Wuest et al. v. Moehrig et al., 24 Tex. Civ. App. 124, 57 S. W. 864; Daughtrey v. Knolle, 44 Tex. 450. That proposition is not contested where the relief sought is confined to the original parties to the transaction in which the mutual mistake occurred, but the proposition is contested when the principle is sought to be extended to a remote vendee. In all cases of mistake in written instruments courts of equity will interfere and grant relief as between the original parties, or those claiming under them in privity, with notice of the facts. Blumberg v. Mauer, 37 Tex. 7; Story's Equity Jurisprudence, § 162; Adams v. Baker, 24 Nev. 162, 51 Pac. 252, reported in 77 Am. St. Rep. 799.

In this case the deed from Lomax to Nichols and the deed from Nichols to Frazer gives the same description of the tract of land conveyed as does the deed from appellant to Lomax. The evidence is that in each transaction the vendor and vendee thought that the tract contained 157.3 acres of land, as estimated by Pennington, and that the transactions of sale were consummated with that understanding and on that basis. We see no good reason why appellant cannot have her relief against appellee if the mistake as to the quantity of the land conveyed was likewise mutual as to subsequent vendees, and, if, as claimed, the purchase was by the acre, and not in gross, and the warranties in the conveyances are as to the title, and not to quantity. The vendees get all the land they bargain for and pay for. If the rule did not extend to a remote vendee simply because he was not a party to the original transaction in which the mutual mistake originated, the result would be that the original grantor would part with property not embraced in his contract, and the vendee would acquire property not purchased or paid for. In such case the courts would recognize a contract never contemplated nor made by any party.

We are of the opinion that the court was in error in withdrawing the case from the jury.

The case is reversed and remanded.