POLK et al. v. CAREY et al.   (No. 880.)*

(Court of Civil Appeals of Texas.   Beaumont.
Dec. 28, 1922.   Rehearing Denied
Feb. 7, 1923.)

1. Appeal and error ⊂⊃1010(1)—Findings that deed was correction deed conclusive.

In trespass to try title where the evidence raised the issue of whether a second deed between the same parties was intended as a correction deed, the finding of the trial court thereon is conclusive.

2. Deeds ⊂⊃206—Finding that second instrument was correction deed supported by evidence.

Evidence held to support finding that second deed between same parties, reciting identical consideration and same number of acres, with other persuasive similarities, was intended to correct the erroneous description of the first deed.

3. Deeds ⊂⊃108—Correction deed effective as of date of first instrument.

A second deed, correcting the erroneous description contained in a former deed between the same parties, as between them relates back and becomes effective as of the date of the first deed.

4. Deeds ⊂⊃43—Correction deed looked to in aid of description in prior instrument.

A deed intended to correct erroneous description in a prior deed may be looked to in aid of the description in such prior deed.

5. Deeds ⊂⊃43—Vendor and purchaser ⊂⊃184—Payment for land gives equitable title; equitable title under void deed perfected by correction deed, and good against subsequent purchasers with notice.

A purchaser, who pays for certain land, acquires the equitable title thereto, though his deed is void for defective description, and the grantor's subsequent correction deed perfects the equitable title into a legal title and is binding on the grantor and all purchasers with notice of the grantee's prior equity.

6. Deeds ⊂⊃115—Obvious error in description disregarded.

Under the rule that if, from the entire description in the deed, the land can be clearly and certainly identified, an obvious misdescription in some particular will not invalidate the deed but should be disregarded, a deed containing calls for grantor's headrights, where the clear intent of the deed as appears from subsequent correction deed was to include land in an adjoining survey, held to convey such additional land.

7. Vendor and purchaser ⊂⊃245 — Whether subsequent buyer was chargeable with notice of prior purchaser's title held question of fact.

Where deed correcting misdescription in original deed was executed four days subsequent to grant made to third person, held there was an issue raised whether the latter took subject to the rights of the first grantee,

who was then living on the land as recited by the first and correction deeds.

8. Deeds ⊂⊃66, 194(3)—Delivery held question of fact; presumption of delivery on date of deed rebutted by circumstances.

Although the date of a deed and not of the acknowledgment is presumptively the date of delivery, yet where a deed to M. was not acknowledged until four days after its date or one day after a correction deed had been executed in favor of a prior grantee to rectify a misdescription which might conflict with M.'s deed, the issue was raised that M.'s deed was not delivered until the execution and delivery of the correction deed, it being presumed that grantor acted honestly and in good faith with both grantees.

9. Adverse possession ⊂⊃51—Adjudication of title did not disturb possession of occupants not parties, who were mistakenly believed to be on adjoining league.

In trespass to try title, where the occupants of a portion of the league were not parties, and all of the parties mistakenly believed such portion to be no part of the league involved, but treated its boundary fence as the league boundary line, the judgment decreeing title to the "north half of said J. B. league of land" did not involve nor disturb the possession of said occupants nor interrupt the running of 10-year limitations.

On Rehearing.

10. Appeal and error ⊂⊃768—Admissions in brief used as basis for conclusions in absence of statement from record on issue.

On appeal in trespass to try title, where appellant's brief contains no statement from the record on the issue of limitations, but does contain admissions, the court will base its conclusions upon such concessions.

11. Adverse possession ⊂⊃100(1) — Coextensive with boundaries in deed.

Possession by one who enters claiming title by deed will be deemed coextensive with the boundaries of his deed, and where grantee entered under a recorded deed and made improvements within his boundaries, his possession extended to the whole.

Appeal from District Court, Jefferson County;  W. H. Davidson, Judge.

Trespass to try title by M. S. Polk and others against Richard Carey and others.  Judgment for defendants, and plaintiffs appeal.  Affirmed, and motion for rehearing overruled.

Collins, Morris & Barnes, of Beaumont, for appellants.

Gordon, Lawhon & Pool, O'Brien & Shaw, and C. A. Lord, all of Beaumont, for appellees.

WALKER, J.  This was a suit instituted by appellants against appellees in the ordinary form of trespass to try title, involving a strip of land 235 varas wide off the north side of the Bullock league in Jefferson county,

---
⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 28, 1923.

Tex., now a part of the city of Beaumont, on which have been made improvements to the value of about $125,000. Defendants answered by pleas of not guilty and limitation. On a trial to the court without a jury, judgment was entered for defendants. On motion of appellants, the trial court filed conclusions of law and fact.

The Bullock league is junior to, and lies immediately south of, the David Brown league, and was granted to J. W. Bullock by the Mexican government on the 19th day of January, 1835. On May 8, 1835, Bullock conveyed the north half of his league to David Brown, the owner of the Brown league.

Appellants' chain of title is as follows: By deed dated the 26th day of July, 1840, acknowledged before the county clerk on the 31st of July, 1840, and filed with the county clerk for record on the day of its acknowledgment, David Bown conveyed the north half of the Bullock league to M. S. Miller. Mrs. Maggie Polk was the sole heir of M. S. Miller. Some of the appellants are her heirs, and others hold under her title.

Appellees' claim of title is as follows: By deed dated the 4th day of November, 1839, acknowledged 28th day of November, 1839 (senior to appellants' title), David Brown conveyed 320 acres of land to George W. Tevis under the following description:

"All my rights, title, claim and interest in and to 320 acres of land south and adjoining to the town of Santa Anna so as to include his, the said George W. Tevis', improvements where he now lives, said 320 acres being on my headright as a colonist of Texas granted me by the government commissioner, George A. Nixon, in the year of 1835, and for him, the said George W. Tevis, his heirs, or assigns."

By deed dated the 30th day of July, 1840, acknowledged the 30th day of August, 1840, David Brown conveyed to George W. Tevis 320 acres of land by the following description:

"All my rights, title, claim and interest in and to a certain tract of 320 acres of land lying and being in the county of Jefferson and Republic aforesaid, and on the west side of the river Neches, and immediately below the town of Santa Anna, and is a part of the headright of the said David Brown and a part of the survey of the J. W. Bullock and bounded as follows, to wit:

"Beginning at a stake on the lower line of the town of Santa Anna from which a black oak bears N. 19 deg. West 2.2 vrs. and a black jack bears S. 8.6 vrs.; thence N. 80¾ deg. E., at 730 vrs. a stake for second corner; thence S. 4 deg. at 1,530 vrs. a stake for the third corner from which a sweet gum bears N. 71 deg. W. 6.2 vrs.; thence W. 3,910 vrs. at stake for the fourth corner from which a black jack bears S. 24¾ deg. E. 195 vrs.; thence N. 8¾° E. 3,460 vrs. a stake for the fifth corner; thence N. 10° E., at 529 vrs. to the place of beginning. The aforesaid tract of 320 acres of land upon which the said George Washington Tevis now resides."

In both deeds, David Brown is named as a citizen of San Augustine county, Tex., and Tevis as a citizen of Jefferson county. The first deed purports to have been executed in San Augustine county, and the second deed in Jefferson county. In both deeds the consideration is named as $2,000. By subsequent sales, the land as described in the second deed to Tevis was subdivided and held by different parties, but in 1869 the title to all the different subdivisions was in William and E. L. Wiess, who in that year conveyed the entire tract of 320 acres to Mrs. Clara Chaison, describing it as a part of the headright of David Brown. As to the land conveyed by this deed, appellants in their brief make the following admission:

"The deed under which Mrs. Clara Chaison claimed the old Chaison place, called in the evidence the Tevis 320 acres of land, calls only for land on the David Brown headright, but by actual survey it would run down 235 varas on the Bullock. * * * The Chaisons claimed down to the 'brick corner line.' * * * The 320 acres claimed by Mrs. Chaison under the William Wiess deed was rendered and taxes paid on it as a part of the David Brown league."

Mrs. Chaison held this land as her separate property, and her title, whatever its nature, was not divested out of her except by voluntary conveyances, under which appellees hold. The "brick corner line," referred to by appellants, in the admission above quoted, corresponds with the south boundary line of the Tevis 320 acres, as described in his second deed. The date of the making of this line is not shown, but it was recognized by the oldest citizens living near this land and by the owners of both the Brown and the Bullock as the true dividing line between the Bullock and the Brown. When Mrs. Chaison bought from William and E. L. Wiess, she claimed to the "brick corner line," believing that it was all on the Brown survey. In 1891 the error was discovered, and the true north boundary line of the Bullock, the dividing line betwen the Bullock and the Brown leagues, was located 235 varas north of the "brick corner line." All parties to this appeal agree on the location of the true north boundary line of the Bullock. The land in controversy lies between the "brick corner line" and the true north boundary line.

On appellees' pleas of limitation, appellants make the following admission:

"Without quoting the evidence it will be conceded that the possession beginning with Clara Chaison and Jef Chaison in 1869, after the date of the deed from Wm. Wiess to Clara Chaison, was sufficient to bar plaintiffs' rights to recover under the 10-year statute, but not under the 5, because the deed from said Wiess to Clara Chaison called for land only on the David Brown, and it was shown that under the claim asserted under the Clara Chaison deed, only land on the David Brown league

was assessed for taxes, or paid upon, but we believe the evidence was sufficient to establish 10 years' limitation between the taking of possession by Jef Chaison and Clara Chaison in 1869, and the filing of the suit of Maggie Polk et al. v. Jef Chaison et al. in 1865."

The suit of Mrs. Maggie Polk et al. v. Jef Chaison et al. was in trespass to try title, and involved the north half of the Bullock league. On the 6th day of June, 1889, Mrs. Polk recovered judgment against Jef Chaison and all the other defendants, except Fredericka Wendt, for the land in controversy, under the following description:

"The north half of said league of land originally granted by the Government of Coahuila and Texas to the colonist James W. Bullock, situated, lying and being in the county of Jefferson and state of Texas, about two miles south of Beaumont, less said above-described 100 acres; said half of a league of land is further described as follows: Bounded on the north by lands granted to David Brown as a colonist. * * *"

The "above-described 100 acres" was thus described in the judgment:

"One hundred acres formerly deeded to said Henry Wendling, Sr., by John Collier and J. D. Bullock respectively under her and their pleas of limitation, filed herein, it is ordered adjudged, and decreed that said Fredericka Wendt, her heirs, or assigns, to have, recover, and hold of the plaintiff the said 100 acres of land a part of the said north half of said James Bullock league of land described in said deed as follows:

"Beginning at the northeast corner of said league on the Neches river marsh thence running 280 yards south in a straight line along the marsh so as to make four acres in width; thence running west 1,750 yards or so far as to make 100 acres in said survey; thence north 280 yards to the north line of said league; thence east along said line to the N. E. corner on the Neches marsh the place of beginning."

The northeast corner of the Fredericka Wendt 100 acres thus described was in the "brick corner line" and the north boundary line of the Fredericka 100 acres coincided with the "brick corner line." At the time the suit of Polk v. Chaison was instituted, and at the time judgment was entered therein, all the parties, both plaintiffs and defendants, believed that the north boundary line of the Bullock was the "brick corner line," and it was not the intention of the parties to that suit to put in litigation the title to any land north of the "brick corner line." Subsequent to the entry of the judgment in her favor in that suit, Mrs. Polk made many sales of land on the north half of the Bullock calling for the north boundary line, but the evidence is clear that the "brick corner line" was intended and referred to in such calls.

## Opinion.

[1-3] 1. The second deed from Brown to Tevis was intended as a deed of correction, and conveyed the same land which Brown intended to convey in the first deed. The evidence raised this issue and the trial court, having resolved it in favor of appellees, we are bound by his conclusion. In fact, we think the following facts fully sustain the trial court. The same quantity of land was conveyed in both deeds, to wit, 320 acres. The same consideration was paid for the land, to wit, $2,000. The first conveyance was to include Tevis' "improvements where he now lives." The second deed described the land as being that "upon which the said Tevis now resides." The first deed described the land as being "south and adjoining to the town of Santa Anna," the second as being "immediately below the town of Santa Anna." It affirmatively appears from the record that Tevis never improved any other land, never lived on any other land, and never claimed any other land "south of and adjoining the town of Santa Anna" than that described in the second deed to him from Brown. If we are correct in this conclusion, then the second deed, with its particular description of the land, conveyed, as between the parties thereto, related back and became effective as of the date of the first deed.

[4, 5] 2. A second deed can be looked to in aid of the description given in a prior deed. Curdy v. Stafford, 88 Tex. 120, 30 S. W. 551; Patterson v. Patterson (Tex. Civ. App.) 27 S. W. 837; McCartney v. McCartney (Tex. Civ. App.) 53 S. W. 388; Deal v. Cooper, 94 Mo. 62, 6 S. W. 707; Wells v. Heddenberg, 11 Tex. Civ. App. 3, 30 S. W. 702; Fox v. Windes, 127 Mo. 502, 30 S. W. 323, 48 Am. St. Rep. 648. If the first deed were absolutely void because of defective description, yet as Tevis bought 320 acres and paid for it, he acquired an equitable title thereto, and any subsequent designation by Brown of the land sold by him to Tevis would be binding on him and all subsequent purchasers with notice. Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203. The second deed gave a good description of the land conveyed, and perfected the equitable title into a legal title, binding on all parties holding under Brown who purchased from him with notice, actual or constructive, of Tevis' prior equity.

[6] 3. By the aid of the second deed, the land originally sold to Tevis was located as being on both the Bullock and the Brown and as including the land in controversy. Construing the two deeds together, it appears that the description of the land as being on the Brown league given in the first deed is an obvious error and should be disregarded. Carlisle v. King (Tex. Sup.) 133 S. W. 864. The land can be fully located on the ground without relation to the calls for the headrights. It is the well-settled law of this state that if from the entire description given in a deed the land sold can be clearly and certainly identified, a misdescription in some particular part will not invalidate the deed

as a conveyance, but such misdescription, if an obvious error, should be disregarded. Hunt v. Evans (Tex. Civ. App.) 233 S. W. 856; Cartwright v. Trueblood, 90 Tex. 538, 39 S. W. 930; Connor v. Mangum (Tex. Civ. App.) 127 S. W. 256; Summit Place Co. v. Terrell (Tex. Civ. App.) 207 S. W. 145; De-Guerra v. DeGonzalez (Tex. Civ. App.) 232 S. W. 896; West v. Houston Oil Co., 46 Tex. Civ. App. 102, 102 S. W. 927.

[7] 4. Though Miller's deed to the north half of the Bullock was executed four days prior to the second deed to Tevis he did not acquire the superior title unless he was an innocent purchaser against Tevis' claim. Tevis was living on the 320 acres of land claimed by him. This appears from the description given in both deeds. Before the deed to Miller was acknowledged, Brown recognized his relations and obligations to Tevis and executed to him the second deed. At some remote date, not revealed by the record, those holding the Miller title, whether in Miller's lifetime or subsequent thereto the record does not disclose, recognized the south boundary line of the Tevis tract as the north boundary line of their claim. Neither Tevis nor those holding under him were disturbed in their possession and claim of the narrow strip on the Bullock from 1840 until this suit was instituted on the 21st of October, 1920, a period of 80 years. The oldest living settlers in the neighborhood where this land is situated testified that those holding the Tevis title claimed to the south boundary line of the Tevis tract as described in the second deed from Brown, and as far as they took notice of the location of the fences, they were on the south boundary line. In the early 50's trees were growing around the old home place that appeared to be as much as 30 years old. Only four days before the date of Miller's deed, Brown executed a second deed to Tevis, recognizing a marked line on the ground, defining the extent of Tevis' claim on the south. In view of all the facts and circumstances connected with Tevis' claim to this land, and the execution of the three deeds in 1839 and 1840, in our judgment an issue arose in appellees' favor that Miller was not an innocent purchaser, and the judgment of the trial court for appellees resolved that issue in their favor. There is no suggestion that an issue of innocent purchaser could arise except in favor of Miller himself.

[8] 5. In this state the date of a deed and not its acknowledgment, in the absence of other evidence, is presumptively the date of delivery." 6 Michie, Dig. 207; Kirby v. Cartwright, 48 Tex. Civ. App. 8, 106 S. W. 742. But this is only a presumption of evidence and not of law, and must yield to the circumstances of each particular case. We believe the circumstances attending the execution and delivery by Brown of the deed to Miller, and of the second deed to Tevis, raised

the issue that Miller's deed was not delivered until the execution and delivery of the second deed to Tevis. As we have seen, the Miller deed was executed on the 26th day of July, 1840, but was not acknowledged until the 31st day of July, 1840, the acknowledgment on that day being taken by the county clerk, and on that day the deed was filed with the clerk for record. In the meantime, on the 30th day of July, 1840, Brown executed the second deed to Tevis. Though Brown was a citizen of San Augustine county, the second deed purports to have been executed in Jefferson county, while the first one purports to have been executed in San Augustine county. As Brown had sold Tevis 320 acres of land, and under the deed conveying this land some question could arise as to the validity of the deed, Brown rested under the moral duty of correcting the mistake he had made, and not to sell Tevis' land to an innocent purchaser.

"As a general rule, it is proper to indulge a presumption that in their business and social relations all persons act honestly and properly and in good faith." 22 C. J. 146.

Under these facts, we think the presumption should be indulged that Brown acted honestly with Tevis and with Miller, and did not deliver the deed to Miller until he had executed and delivered the second deed to Tevis. There is not a suggestion in the record against indulging the presumption that the Tevis deed was delivered on the day it was executed. If we are right in these conclusions, then Miller acquired no title to the land and could recover only by showing affirmatively that he was an innocent purchaser. No effort was made by appellants to meet that issue.

6. It appears from the statement and admissions made by appellants as given above, that the land bought by Clara Chaison from William and E. L. Wiess, when located on the ground, would, in fact, include the land in controversy. Then the only hindrance to her title is the description of the land as being on the Brown headright. No question is made, but the point is conceded by appellants, that the deed to her, apart from the reference to the Brown headright, is sufficient in its descriptive terms to include the land in controversy. It appears affirmatively from the record that at that time those holding the Miller title recognized the south boundary line of Mrs. Chaison's tract as being the north boundary line of the Brown survey. It appears that those holding on the Brown believed that the south boundary line of the Tevis tract was the dividing line between the two surveys. The error then in Mrs. Chaison's deed, describing her land as being on the Brown league, was an obvious error and misdescription, and under the authorities above cited should be disregarded and the land located on the ground by

giving effect to the calls which manifest and give evidence to the intention of the grantor. The soundness of this conclusion is manifest, when we recognize that "the office of the description in a deed is not to identify, but to furnish the means of identification." Seureau v. Frazer (Tex. Civ. App.) 189 S. W. 1003. We cannot better illustrate the force and soundness of this conclusion than by quoting as follows from appellants' argument filed in this case:

"While the deed from Wm. Wiess to Clara Chaison called only for the David Brown, back in the inception of this claim, in the deed from David Brown to George W. Tevis, it called for land on the Brown and Bullock. The actual survey of the land described in the deed from David Brown to George W. Tevis, dated July 30, 1840, calling for land both on the Brown and the Bullock survey, would put the Southern boundary of said land right where the 'brick corner line' is known to be located (this being the south boundary line of said Tevis 320-acre tract). If Jef Chaison claimed under that deed he was charged with notice of the fact that the 320 acres of land claimed by him and Clara Chaison crossed the true north line between the Brown and the Bullock, and he was further charged with notice of the fact that the 'brick corner line' was not the true north of the Bullock, but was the south line of the land conveyed in said deed from said Brown to said Tevis, and he was further charged with knowledge of its true location."

The construction we have given Mrs. Chaison's deed should be given to all deeds in appellees' chain of title subsequent to the second deed from Brown to Tevis, and under that construction appellees held the record title from and under the original grantees. But appellants admit that it is not necessary for appellees to connect themselves with the original grantee, but "if the deed from David Brown to George W. Tevis, dated November 4, 1839, and acknowledged November 28, 1839, conveyed the land in controversy on the facts adduced in this case, plaintiffs have no right to recover." We hold that Brown's first deed to Tevis, construed in connection with the second deed, passed the title of the land in controversy, and that M. S. Miller acquired no title under his deed, and hence appellants have no title.

[9] 7. But if we concede that Miller acquired the title under his deed from Brown, it was lost to the Chaisons under their 10 years' possession. As we have seen, on this issue appellants admit:

"Without quoting the evidence it will be conceded that the possession beginning with Clara Chaison and Jef Chaison in 1869, after the date of the deed from Wm. Wiess to Clara Chaison, was sufficient to bar plaintiffs' rights to recover under the 10-year statute, but not under the five, because the deed from said Wiess to Clara Chaison called for land only on the David Brown, and it was shown that under the claim asserted under the Clara Chaison deed, only land on the David Brown League was assessed for taxes, or paid upon, but we believe the evidence was sufficient to establish 10 years' limitation between the taking of possession by Jef Chaison and Clara Chaison in 1869, and the filing of the suit of Maggie Polk et al. v. Jef Chaison et al. in 1885."

But appellants meet this admission by the following proposition:

"If said deed from Brown to Tevis conveyed any land on the Bullock, and if by her deed from Wm. Wiess, Clara Chaison acquired title to any part of the Bullock survey, then to that extent Maggie Polk did not recover in the judgment in the suit of Maggie Polk v. Jef Chaison et al. because Clara Chaison was not a party to the suit. But if Clara Chaison acquired no title on the Bullock survey by virtue of her deed from Wm. Wiess, then the judgment in the suit of Maggie Polk et al. v. Jef Chaison et al. did divest both Jef Chaison and Clara Chaison of all title or interest they had in the north half of the Bullock survey."

We do not think this proposition is sound. Under all the facts attending the suit of Polk v. Chaison, we have concluded, as stated above, that the land in controversy was not involved. If it was not, of course, the possession of Jef and Clara Chaison, held by them under appellants' admission, was not disturbed. And how could it have been involved? True the judgment called for all the north half of the Bullock league, and described it as being bounded on the north by the Brown league, but the record shows conclusively that the parties, in agreeing on this description and in having the same entered, were dealing with the "brick corner line" as the north boundary line of the Bullock and not with the true line. Hence, we conclude that appellees should recover under the possession of Jef and Clara Chaison, subsequent to 1869 and prior to the institution of the suit of Polk v. Chaison in 1885.

For the reasons given, the judgment of the trial court is in all things affirmed.

### On Rehearing.

To our statement of the nature of this suit, we should add that, as filed this suit involved many defendants claiming different parts of the strip of land between the "brick corner line" and the north boundary line of the Bullock. The appellees to this appeal severed their claims from the balance of the land in controversy, and the only issues before us now relate to their severed rights.

On the original submission of this case, we based our findings of 10 years' limitation on the concessions made by appellants in their brief. They now assert that we have not properly construed their concessions, and failed to given consideration to their supplemental statement, filed subsequent to oral argument, which was as follows:

"A concession made by appellants on page 67 of their brief, to the effect that there was sufficient possession shown under the joint use

and occupancy of Jef Chaison and Clara Chaison to support limitation, and the statement under fourth proposition, that there was not sufficient possession to support limitation, seem inconsistent and contradictory. But they are not contradictory if all the facts are considered and are examined from the standpoint which appellants had in mind in considering them in the argument.

"A large portion of the land involved in the main suit had been in the joint possession, use and occupancy of Jef Chaison and Clara Chaison for such a length of time as to give them title by limitation, and all this evidence is adduced in the trial of the case, but the possession testified about did not extend to the land involved in this severed suit.

"All the possession of Jef Chaison and Clara Chaison was shown upon the trial of the case, and the concession on page 67 of the brief is true as to title to such land as was included in their possession and as to such land as was in their possession, they might have acquired title under the statute of limitation, and that is what appellants had in mind in making the concession found on page 67 of the brief. But the deed to Mrs. Clara Chaison called only for land on the Brown survey, and possession of any portion of the land in the main suit, which did not extend to the land in the severed suit, would not be possession of land in the severed suit, since the land in the severed suit was not included in Mrs. Chaison's deed.

"It was shown that Jef Chaison and Clara Chaison, as husband and wife, had joint possession for a long time of a portion of the Bullock survey and a portion of the strip of land in controversy in the main suit, and it may be that the facts will show on the trial of the main suit that they acquired title by limitation to such portion of the strip of land in the main suit as they had in possession. But their deed calling for only land on the Brown survey, their possession of any portion of the Bullock survey will be confined to actual possession which never extended to or included any portion of the land involved in this severed suit now before this court. Hence, the court will readily understand why appellants made the concession on page 67, that the evidence was sufficient to support a finding that Clara Chaison and Jef Chaison, by their joint occupancy and use as husband and wife, acquired title by limitation, but even if limitation be conceded to them on account of their joint use and occupancy on the land of which they had actual possession, being community property, they lost it in the suit of Maggie Polk et al. v. Jeff Chaison et al. But such possession and limitation, if any, never extended to the land in controversy in this severed suit.

"This concession was made under the facts adduced, which show possession of land involved in the main suit, but not as to any land involved in this severed suit. They never had possession of the land involved in this severed suit, and inasmuch as they did not claim under any deed which included the land involved in this severed suit, their actual possession on some other portion of the Bullock survey never extended to, nor included, the land involved in the severed suit."

[10, 11] We had this statement before us and gave it the most careful consideration. We do not understand that it modifies in the least the concession made in the original brief, nor that it was so intended; but only to correct what seemed to appellants "inconsistent and contradictory." They now insist "that the court cannot find as it did on any concession, but must find limitation from the facts proved, if it finds limitation at all." In their argument on this point, they say:

"The facts of possession are before this honorable court in appellants' brief (see pages 46 to 56 of appellants' brief), and it is unnecessary to restate them in this brief."

By referring to the pages of the brief thus cited, we find that appellants made a statement of the possession on the 320 acres prior to the date of the deed to Mrs. Chaison. After that statement, they say:

"We deem it unessential to quote the evidence relating to question of limitation under the joint possession of Jef Chaison and Clara Chaison."

Then they conclude with a statement of the possession of the property subsequent to the judgment in the case of Polk v. Chaison. As the issue of 10 years' limitation is in the case, and as appellants have made no statement from the record on that issue, we have no alternative except to base our conclusions on the concessions made by appellants in their original brief and in the supplemental statement above given. From the concessions thus made, there is no claim on the part of appellants that any part of the Bullock included in Mrs. Chaison's deed, as we construed in the original opinion, was ever severed by her from the balance of that tract claimed by her during the limitation period, nor that Mrs. Polk was in actual possession of any part of the Bullock during that period. Then while she did not have actual possession of the portion of the Bullock involved in this appeal, she did have actual possession of a portion of the Bullock included in her deed, and her actual possession of a part was constructive possession of all the Bullock included in her field notes.

"Where one enters into the possession of land, claiming title by deed, his possession by law will be deemed coextensive with the boundaries stated in his deed." 11 Michie's Digest of Texas Reports, 1122.

Appellants would avoid the effect of Mrs. Chaison's possession on the Bullock on the ground that it was only an encroachment. That doctrine has no application to the facts of this case, because her possession did not extend beyond the boundaries fixed by her deed, and she claimed nothing not included in her field notes. On the effect of her possession on the Bullock, as distinguished from

an encroachment, our Supreme Court said, in Bracken v. Jones, 63 Tex. 184:

"Whilst the true owner is chargeable with a knowledge of the boundaries of his land, he can hardly be affected with notice that a neighbor, who has encroached a few feet upon his tract, is doing so for the purpose of acquiring title to 640 acres of it. He would rather impute it to a mistake on the part of the apparent trespasser as to the division line between them. Whilst this might not excuse the party trespassed upon for not asserting his right to the land actually occupied by the trespasser, it would certainly save him from such consequences as the loss of a section of his land. The party encroaching would be entitled to no more than the land actually occupied by him.

"The case is different when one settles upon the land of another, claiming under a recorded deed, and having his improvements located within the bounds called for in such deed. Then the true owner has notice of the extent of the claim of his adversary, and that the improvements are upon it as well as upon his own land, and that, if continued for the requisite period of time, they will give title to the extent of the land described in the recorded instrument. He knows the consequences of such possession, and must provide against them. Brownson v. Scanlan, 59 Tex. 222."

The other propositions advanced by appellants on this rehearing are disposed of to our satisfaction in the original opinion.

Their motion for rehearing is therefore overruled. Appellees' motion for rehearing is also overruled.